**FIRST NATIONAL BANK OF MEXICO, a Banking Corporation, Plaintiff-Respondent,**

v.

**Margaret E. MUNNS et al., Defendants-Appellants.**

**No. 41430.**

Missouri Court of Appeals, Eastern District, Division Four.

July 29, 1980.

Thomas J. Osborne, Mexico, for defendants-appellants.

Steven W. Vanmatre, Mexico, for plaintiff-respondent.

SIMON, Judge.

Appellants appeal from a summary judgment ordering the delivery to respondent of funds held in a trust savings account assigned as security for a promissory note payable to respondent. We affirm.

Robert L. Munns borrowed $15,000 from the First National Bank of Mexico (respondent) and executed a promissory note in the same amount. He assigned a trust certificate of deposit in the amount of $15,104.86 as security for the note. Later, Robert L. Munns borrowed an additional $7,000 from the respondent and executed a promissory note in the same amount. He defaulted in the payment of the notes and the respondent (First National Bank of Mexico) brought this action for recovery on the promissory notes made by Robert L. Munns and to order the delivery by Citizens Savings Association, of funds in their possession as evidenced by a trust certificate of deposit pledged, under the conditional assignment, as security for the $15,000.00 note. Robert L. Munns failed to answer and defaulted, and appellants Margaret E. Munns and Margaret Ann Rouse (Robert L. Munns' mother and sister) intervened as defendants pursuant to Rule 52.12(a), claiming an interest in the trust savings account evidenced by the certificate. Appellants filed an answer and counterclaim to respondent's petition and crossclaim against Rob-

ert L. Munns and Citizens Savings Association. Respondent and appellants filed cross motions, supported by exhibits and affidavits, for summary judgment as to the ownership of the funds in the trust savings account.

Appellants were named beneficiaries of a trust savings account established by Robert L. Munns depositing $15,104.86 into a savings account designating "Robert L. Munns, trustee for Margaret E. Munns and Margaret Ann Rouse, Beneficiaries." Robert L. Munns, without the knowledge, consent or authority of the appellant, Margaret E. Munns, had withdrawn the $15,104.86 from a joint savings account at Citizens Savings Association, designated "Margaret E. Munns and Margaret Ann Rouse and Robert L. Munns, joint tenants with right of survivorship and not as tenants in common." Appellant Margaret E. Munns had created a joint savings account with the funds she had received from the sale of her home following the death of her husband. It was her intention to retain the right to use the money during her life but upon her death, it was to be divided equally between the surviving joint tenants. Each of the joint tenants executed the deposit agreement establishing the joint account. Said agreement authorized withdrawal from the account or the pledging of account by any of the joint tenants. Only Robert L. Munns executed, as grantor, the Discretionary Revocable Trust Agreement establishing the trust savings account.[1] At the time of the pledging and assignment of the trust certificate, Robert L. Munns assured respondent's vice-president that the funds evidenced by the trust certificate belonged to him and that he had the authority to pledge them or to withdraw them at any time, and that he would do so in the event of a default on the promissory note. The respondent gave written notice of the assignment to Citizens Savings Association. The trial court entered a default judgment in favor of respondent against Robert L. Munns on the notes and in favor of appellants against Robert L. Munns for the money withdrawn from the joint savings account. The trial court sustained respondent's motion for summary judgment and ordered delivery of the funds held in the trust savings account to the respondent. Appellants appeal from the trial court's entry of summary judgment for respondent and the denial of their motion for summary judgment.

Appellants contend the trial court erred in finding the assignment of the trust certificate valid and entering summary judgment for the reasons that: (1) the delivery of the joint certificate created a bailment and Robert L. Munns as a bailee had no authority to assign it; (2) no "Totten" trust was created since Robert L. Munns did not deposit his own property into the account; (3) the respondent had a duty to inquire of the trust beneficiaries concerning the assignment of the trust certificate; (4) Robert L. Munns' pledging and assignment of the trust certificate did not constitute an effective revocation of the trust; and (5) the pledging of the trust property was a breach of trust and the respondent took the assignment subject to the rights of the beneficiaries.

1. Discretionary Revocable Trust Agreement provided:

The funds in the account on the reverse side of this instrument, together with earnings thereon, and any future additions thereto are conveyed to the trustee as indicated for the benefit of the beneficiary as indicated. The conditions of said trust are: (1) The trustee is authorized to hold, manage, invest and reinvest said funds in his sole discretion; (2) *The undersigned grantor reserves the right to revoke said trust in part or in full at any time and any partial or complete withdrawal by the original trustee if he is the grantor shall be a revocation to the extent of such withdrawal, but no other* *revocation shall be valid unless written notice is given to the institution named on the reverse side of this card;* (3) This trust, subject to the right of revocation, shall continue for the life of the grantor and then the proceeds delivered to the beneficiary; (4) The institution in which such funds are invested is authorized to pay the same or to act in any respect affecting such account before or after the termination of this trust upon the signature of the trustee and has no responsibility to follow the application of the funds. *In this instrument the singular included and the masculine includes the feminine and the neuter.* (Emphasis ours)

A summary judgment shall be entered where the pleadings, depositions and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law. Rule 74.04(c).

On appeal, appellants allege that the trial court erred as a matter of law and do not raise any issue as to any material fact and our review did not disclose any.

[1] Appellants initially contend that the delivery by appellant Margaret E. Munns of the certificate of deposit, evidencing the joint savings account, to Robert L. Munns was a bailment and that he had no power to assign it for his own benefit. Our review of the record fails to disclose any evidence of a bailment or that this theory was advocated by the appellants in the proceedings before the trial court. We shall not conduct our review on a theory different from that on which the case was tried. *Teson v. Vasquez*, 561 S.W.2d 119, 132 (Mo.App. 1977). Appellants' first point is not well taken.

Appellants next contend that the trial court erred in finding that a valid "Totten" trust was created since Robert L. Munns did not deposit his own funds into the trust account, and as a result, the assignment was invalid. The New York Court of Appeals established the "Totten" trust principle, in *In re Totten*, 179 N.Y. 112, 71 N.E. 748, 752 (1904), when it held:

"A deposit by one person of his own money in his own name as trustee for

another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the passbook or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor."

The tentative trust, sometimes described as a "Totten" trust, has been recognized in Missouri. See § 369.154 and § 369.179, (Savings and Loan Association);[2] § 362.475 and § 362.480 (Banks and Trust Companies); *Frank v. Heimann*, 302 Mo. 334, 258 S.W. 1000, (banc 1924).

Appellants claim that since Robert L. Munns did not use his own funds to create the trust account, a "Totten" trust did not come into being and rely on *In re Estate of Dillon*, 441 Pa. 206, 272 A.2d 161 (1971) to support their point. *Dillon* concerned the depositing by a testamentary trustee of funds in his name in trust for the beneficiary and then placing the account for his personal obligation. The *Dillon* case reiterates the principle that a grantor must use his own property to create a Totten trust. We are not in disagreement with the *Dillon* holding. However, under the authority of § 369.154 and § 369.174,[3] and *In*

---

**2.** All statutory references are to RSMo 1978 unless otherwise noted.

**3.** Section 369.154, provides in part:

"2. *Savings accounts may be opened and owned by any one or more persons*, partnerships, associations, corporations, political subdivisions, or public or governmental units; shall be represented on the books of an association by a separate account in the name of the owner thereof; and shall be transferable only in the manner authorized by the association's board of directors. *An association shall be under no duty to determine the ownership of the funds received by it for any savings account and shall treat the account holder of record as shown by the savings account contract as the owner for all*

*purposes.* An association shall not be liable to any person claiming any interest in a savings account unless the interest of such person appears in the savings account contract or has been established by a decree or order of court determining the ownership and a copy of such decree or order has been furnished the association. These provisions shall apply even though the name of the person appearing on the savings account contract as owner is modified by a qualifying or descriptive term such as 'agent', 'trustee', or other word or phrase indicating that such person may not be the owner in his own right. The association shall have a lien on a savings account for all amounts owed it by the owner thereof. *The owner of a savings*

*re Estate of LaGarce*, 487 S.W.2d 493 (Mo. banc 1972), Robert L. Munns did place his own funds in the trust savings account. Our Supreme Court in *LaGarce*, id. 500, held:

"Section 369.150 [4] specifically and unqualifiedly provides that if the certificate is issued in the statutory form the account 'shall become the property of such persons as joint tenants and shall be held for the exclusive use of the persons so named and may be paid to any person named therein, or the survivor.' There is nothing in the statute which would warrant the conclusion that a rebuttable *presumption* is created that the deposit shall become the property of such persons as joint tenants and that it may be shown by competent evidence that it was not a joint tenancy even though the statutory form had been complied with. The statute says it '*shall become the property of such persons as joint tenants.*' The limitations were placed upon the statute by judicial interpretation apparently resulting from a consideration of common-law principles.

It is our view that the statute creates what might be described as a statutory joint tenancy which should be given effect without consideration of the strict common-law requirements mentioned in the case." (Emphasis in original)

◼ Appellant Margaret E. Munns deposited the funds from the sale of her home in the joint savings account with her son Robert L. Munns and her daughter, appellant Margaret Ann Rouse, and they executed the joint account deposit agreement; Robert L. Munns became a present joint owner of those funds under the holding of *LaGarce, supra*, and could legally withdraw the funds. Therefore, the depositing of those funds in the trust savings account and the execution of the discretionary revocable trust agreement created a valid Totten *or* tentative trust, *supra*, § 369.179. Appellants' second point is without merit.

◼ Appellants next contend that the trial court erred in finding the assignment of the trust certificate valid in that the respondent had a duty to inquire of the trust beneficiaries as to the authority of the trustee and in failing to do so, took the assignment subject to the rights of the beneficiaries. Appellants rely on § 400.3–304 for the proposition that respondent had knowledge of a fiduciary negotiating an instrument (Trust Certificate of Deposit) for his own benefit in breach of his duty and therefore took subject to the rights of the beneficiaries.

Appellants' reliance is misplaced. Section 400.3–304 pertains to negotiable instruments and not the trust certificate of deposit involved herein. This trust certificate of deposit is not a negotiable instrument; it is not payable to order or to bearer. *Kaw Valley State Bank & Trust v. Commercial Bank of Liberty*, 567 S.W.2d 710, 712 (Mo. App.1978).

---

account may pledge the account to secure his own obligation or that of another and, if written notice of such pledge is served upon the association, the pledgee shall be protected." (Emphasis ours)

Section 369.174, provides in part:

"1. When a savings account is opened or maintained in an association in the names of two or more persons, whether minor or adults, as joint tenants or in form to be paid to any of them or the survivors of them and whether or not the names are stated in the conjunctive or the disjunctive or otherwise, *the savings account and all additions thereto shall be the property of such persons as joint tenants. The moneys is the account and all earnings on the account may be paid to any one of such persons during his lifetime or to any one of the survivors of them after the death of any one or more of them.* The

opening or maintenance of the account in such form, in the absence of fraud or undue influence, shall be conclusive evidence in any action or proceeding to which either the association or any survivor is a party of the intention of all the parties to the account to vest title to the account and the additions and earnings thereto in the survivor." (Emphasis ours)

4. Chapter 369, including § 369.150 was repealed in 1971 and a new chapter was enacted. Sections 369.154 and 369.174 are the sections which pertain to joint accounts. The *LaGarce* holding has been reaffirmed. See *McGee v. St. Francois County Savings and Loan Association*, 559 S.W.2d 184 (Mo. banc 1977); *Pollock v. Brown*, 569 S.W.2d 724, 731 (Mo. banc 1978).

Appellants argue other points of law concerning a creditor's actual or constructive notice of a breach of trust but ignore § 369.154(2) which specifically authorizes the pledging of a savings account and requires notice to the association where the account is maintained. There is no statutory requirement of notice to the beneficiaries (appellants) under the facts of the case herein. The respondent made inquiry of Robert L. Munns' authority in regards to the funds and notified the Citizens Savings Association of the pledge. Appellants' point is without merit.

Appellants next contend the trial court erred in finding that the assignment of the trust certificate constituted a revocation of the trust, and that the respondent took the funds free of the rights of the trust beneficiaries. Appellants argue that the trust could be revoked only by an actual withdrawal of the funds or by written notice of revocation by the trustee (grantor herein) of the trust.

Section 369.179[5] grants the member,[6] while living, the right to withdraw the funds from the account, in whole or part, and that such withdrawal shall be a valid and sufficient release of the savings and loan association to the extent of the withdrawal. Section 369.154(2) provides that the owner of a savings account may pledge his account to secure his own obligation and, if written notice of such pledge is served upon the savings and loan association, the pledgee shall be protected. In the present case, Robert L. Munns was the owner of the trust account and the respondent was the pledgee.

Under the mandate of the statutes and the discretionary revocable trust agreement, a withdrawal of the funds would constitute a revocation of the trust to the extent of the withdrawal. The crucial question is "Did the pledging and assignment of the trust account as security for the note result in a revocation of the trust to the extent of the amount necessary to satisfy the balance due on the note?" We hold in the affirmative.

The holding set forth *In re Totten,* *supra,* at 752, proscribed that the trust could be revoked by some decisive act or declaration of disaffirmance, and the Restatement[7] provides that a tentative trust of a savings deposit can be revoked by the depositor at any time during his lifetime, by a manifestation of his intent to revoke the

---

**5.** Section 369.179 provides:

1. A member who holds a certificate for an account indicating that such holder is trustee for a beneficiary or beneficiaries shall have the right to vote as a member as if such membership certificate were held absolutely, but shall not have the right to hold office by virtue of such holding.

2. The withdrawal or redemption value of such an account, and dividends thereon, may be paid in whole or in part to such member, without regard to any notice to the contrary so long *as such member is living; and such payment shall be a valid and sufficient release and discharge of the association, to the extent of such payment.*

3. If such member dies, the association after thirty days from the date of death may treat as owner of the account, and may pay the withdrawal value thereof and dividends thereon to, the apparent or presumed beneficiary or beneficiaries, whether minor or adult, unless the association has acknowledged receipt at its home office of, or has been served there by an officer empowered to make service of process with, a written notice of a claim to the contrary; and the receipt or acquittance of such payee or payees shall be, to the extent of such payment, a valid and sufficient release and discharge of the association.

4. This section, except the first sentence,

(1) Shall not be applicable to an account in the name of an administrator, executor, guardian, curator or fiduciary appointed by or acting under supervision of a court of record, and known by the association to be held in such capacity,

(2) Shall not apply contrary to the terms, conditions or beneficial interests of any express trust to which the account is subject and of which the association has notice, and

(3) Is enacted for the protection of the association and is not determinative of the rights of persons interested in such account as between themselves.

**6.** Section 369.014(15) defines a member "*as a person owning a savings account of an association or a person borrowing from or assuming or obligated upon or owning property securing a loan held by an association.*" (Emphasis added)

**7.** Restatement (Second) of Trusts, § 58(c).

**916**

trust. No particular formalities are necessary to manifest such an intention. Although the tentative or Totten trust role allows revocation by a decisive act or declaration of disaffirmance, most courts do not consider an oral declaration, absent positive conduct manifesting an intention to revoke, as effectively revoking a tentative (Totten) trust. See 46 A.L.R.3d 487, 500, § 5. The facts establish that Robert L. Munns assured the respondent's vice president that he had the right and power to pledge and withdraw the funds and would withdraw in the event of his default on the promissory note. He pledged the certificate and executed an assignment. The statements and actions were decisive and constituted a revocation of the trust to the extent necessary to secure the promissory note. See *Klaw v. Kramer*, 56 Misc.2d 173, 288 N.Y.S. 322, 323 (1968); *Evinger v. MacDougall*, 28 Cal. App.2d 175, 82 P.2d 194 (1938).

Our research has revealed no Missouri case on the point under consideration, and § 369.179 is silent as to methods of revocation, except by redemption or withdrawal. However, § 369.154(2) specifically authorizes the pledging of a savings account by its owner and, upon written notice to the association, the pledgee shall be protected. It was obviously the legislature's intent to allow trust savings accounts, established in accordance with the statutes, to be revoked in such a situation. To hold otherwise, would result in a frustration of the legislative mandate.

In addition, the discretionary revocable trust agreement specifically provides for revocation by the trustee, if he is the grantor. He could revoke by withdrawal in part or in full but no other revocation would be valid unless written notice is given to the association. Written notice, in accordance with § 369.154(2), was given to the association. Appellants argue that the written notice should have been given by Robert L. Munns himself but neither the statute nor the trust agreement so demands. We rule this point against the appellants.

Appellants' last allegation of error, is a summarized restatement of their previous contentions. We find no new allegations of error raised therein. Our holding in appellants' other contentions are dispositive of this allegation.

Judgment affirmed.

SMITH, P. J., and SATZ, J., concur.