In re the ESTATE OF Levi Webb EVANS, Deceased.

James EVANS and Helen Evans, Appellants,

v.

Levi Webb EVANS, Deceased,

R. Paul Evans, Administrator, Respondent.

No. WD 31563.

Missouri Court of Appeals, Western District.

March 30, 1981.

James B. Wilson, Windsor, for appellants.

Robert L. Cox, Poague, Wall, Eshelman & Cox, Clinton, for respondent.

Before KENNEDY, P. J., and SHANGLER and SOMERVILLE, JJ.

SHANGLER, Judge.

The appeal comes from an adjudication by the Probate Division of the Circuit Court on a petition by the administrator of an estate to discover assets. The question was whether a deposit of money made by the decedent to the account of the defendants belonged to them as a gift or was the property of the estate. The court determined that the money was a part of the estate and the defendants appeal.

The principals—the deceased [Levi Evans], the administrator [Paul Evans], and the defendant [James Evans]—are brothers.[1]

In early September of 1972, Levi Evans suffered a judgment against him for $24,000 from a vehicular collision at a time when he was without insurance coverage. His truck was taken in execution of the judgment and he became concerned about his other property. Levi made inquiry of an official California agency, and was informed that the bonds he owned were also subject to execution of the judgment. That determined him to remove his assets from California. The next month, Levi traveled to Missouri to consult with brother [now administrator] Paul to accomplish that end. Levi executed to Paul Evans [and his wife] six checks, each for $500, to be kept for him "where no one would know about it." That sum of $3,000 was retransferred to Levi some months later by money order so as to avoid any record of the transaction. At about the same time [October 6, 1972], Levi transferred $45,385 to the account of brother James [and wife Helen]. The testimony of the bank teller was that on that date Levi, in the company of brother James and another bank employee, negotiated government bonds and deposited the $45,385.52 cash into the joint James and Helen Evans

---

1. Levi Evans died testate in California. Paul Evans, as executor of the estate in California, was appointed administrator of the ancillary estate established in Henry County for the purpose of the discovery proceeding.

account. The teller testified also that Levi presented other bonds for cash but was advised to defer the negotiation until November 1st for the accumulation of interest. On that date, as instructed by Levi Evans, the $10,500 cash for the bonds was deposited to the account of James and Helen Evans.[2] The defendants Evans acknowledge they received from the bank the record slip for each deposit. It is the aggregate of these two deposits which was the subject of the discovery of assets procedure in the probate division of the court.

In the course of that October of 1972 sojourn, Levi disclosed to brother Paul that upon his death, Paul would find all the property records in a briefcase at the California residence. When Levi died, the case was opened and disclosed the personal records of the decedent—a ledger card in the hand of the decedent among them. That ledger, dated September 28, 1976, [two months before death] recorded a number of transactions. The first entry recorded: *James W. Evans—$55,885.00* [the total of the two deposits to that account.] The second entry had recorded the $3,000 transaction with brother Paul, but was then marked over as deleted [presumably upon the retransfer of those funds]. The ledger was inscribed with other computations in figures which derive a 6% interest on $55,-885.00 from the dates of deposit. Still other entries recorded the names of numerous banks throughout the several states other than California, with the amounts of the several deposits. That these banks were actual depositaries of funds of the decedent was corroborated by inquiry. These deposits yielded $17,000 to the estate. The last testament of Levi Evans made reference only to the owned residence, and to no other ownership or asset of the estate. [The residence was sold by Paul to pay the outstanding judgment against Levi.]

There was evidence by the defendant brother James to show that the two deposits were meant as gifts. That testimony was by a father and son, acquaintances of Levi, both also friends of the defendant James. The father related that in December of 1972, during a hospital illness, Levi told him that he had given all his money to Jim because Jim had taken care of Levi and the family—that Jim was "the pillar of strength in the family" and that "Jim would always take care of [him]." The testimony of the son was of a declaration by Levi of like tenor some time later. The recollection of the father was, also, that Levi spoke intention to give the residence to Jim—which did not eventuate. The personal expression of the father was that James should have the money.

The court prefaced judgment for the estate against brother James [and wife Helen] by findings of fact consistent with the ultimate determination that the defendants failed to prove the contention of gift.

The defendants contend that the determination by the probate court that they did not prove a gift, was contrary to the evidence and to the law. That review is under *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976). The elements of an inter vivos gift are a present intention of the donor to make a gift, a delivery of the property by the donor to the donee, and acceptance by the donee—whose ownership takes effect immediately and absolutely. *In re Estate of Hoffman*, 490 S.W.2d 98, 102[1] (Mo.1973). The burden rests on the claimant to prove the elements of gift by a clear, cogent, and convincing evidence. *In re Estate of Passman*, 537 S.W.2d 380, 384[2] (Mo.banc 1976). The judgment implicitly determines that the critical element of inter vivos gift—the donative intent—was simply not proved but, rather, that the deposits to the accounts of James and Helen were merely to conceal the assets beyond California so as to avoid legal process upon them. That determination is neither contrary to the weight of the evidence nor otherwise impugnable on review. Rule 73.-01.

---

2. The testimony of the teller was given by stipulation. Who actually made the deposits, however, was not a subject of the agreed evidence.

**318**

The other contention, that the failure of the court to find that the plaintiff was administrator, that plaintiff was an heir of the decedent, and that the defendants adversely withheld funds of the estate, was error has no substance. The status of brother Paul as the administrator and heir was not in controversy. That the defendants were found to hold the deposits adversely to the estate was both implicit in the determination that they did not hold as donees and explicit in the direction of the judgment that the defendants make delivery of the funds to the administrator for the estate, the rightful owner. Counsel requested the court to make findings. The compliance by the trial court comported with every requirement of Rule 73.01(a)(2).

The final contention asserts error for failure to comply with the requirement of § 473.340(3) that in a proceeding to discover assets, the "court shall determine the persons who have an interest in said property together with the nature and extent of any such interest." That is precisely what the court did. The argument on the point merely recites the text of the statute, nothing more. The entire point of the proceeding was to litigate the assertion by the administrator that the funds were the property of the estate and the assertion of the defendants that the property was theirs by gift. The judgment declared the right to the property, directed the delivery to the adjudged owner, and otherwise fulfills the intendments of the statute.

Our review under *Murphy v. Carron*, supra, affirms the judgment. The opinion has no precedential value. Rule 84.16.

All concur.