**BLUE VALLEY FEDERAL SAVINGS AND LOAN ASSOCIATION,**
Plaintiff-Respondent,

v.

**Rufus BURRUS, as Executor of the Estate of Mona Beets Groves, a/k/a Mona Beets Miles, Defendant-Appellant,**

and

**Sherman Miles, Defendant-Respondent.**

No. WD31915.

Missouri Court of Appeals,
Western District.

May 19, 1981.

**112**

W. Raleigh Gough, Independence, for defendant-appellant.

Elisabeth R. Sauer, Campbell, Gilmore, Erickson, Cottingham, Morgan & Gibson, Kansas City, for Blue Valley.

Gene P. Graham, Graham & Clemmons, Independence, for defendant-respondent Miles.

Before TURNAGE, P. J., and MANFORD and KENNEDY, JJ.

TURNAGE, Presiding Judge.

Blue Valley Federal Savings and Loan Association filed an interpleader suit against Rufus Burrus, executor of the estate of Mona Beets Miles, and Sherman Miles for a determination of the ownership of a savings account. The court entered summary judgment in favor of Sherman Miles and Burrus has appealed.

On this appeal Burrus contends the savings account was not a valid trust, that Missouri has not adopted the "Totten trust" doctrine, and to hold the account belonged to Sherman violates the Statute of Wills. Affirmed.

In March, 1975, Mona Miles opened a savings account with Blue Valley in her name as trustee for Sherman Miles, beneficiary. The account was opened on forms provided by Blue Valley entitled "Discretionary Revocable Agreement." The agreement provided as follows: " 'The funds in the account, * * * together with earnings thereon, and any future additions thereto are conveyed to the trustee as indicated for the benefit of the beneficiary as indicated. The conditions of said trust are: (1) The trustee is authorized to hold, manage,

pledge, invest and reinvest said funds in his sole discretion; (2) The undersigned grantor (Mona Beets Miles) reserves the right to revoke said trust in part or in full at any time and any partial or complete withdrawal by the original trustee if he is the grantor shall be a revocation by the grantor to the extent of such withdrawal, but no other revocation shall be valid unless written notice is given to the institution named on the reverse side of this card (Blue Valley Federal Savings & Loan Ass'n.); (3) In the event of the death, resignation, removal, or incompetence of said trustee, *none* is appointed successor trustee * * * or in the event no successor trustee is named herein * * * the institution named on the reverse side hereof is authorized to appoint a successor trustee * * *; (4) This trust, subject to the right of revocation, shall continue for the life of the grantor and thereafter until the beneficiary is *66* years of age, or until his death if he dies before such age, and then the proceeds may be delivered by the association to the beneficiary, or to the trustee on his or their behalf.' (Italicized words are typewritten, the others printed.)"

There is no dispute as to the facts. Sherman Miles was the second husband of Mona and he was 66 years of age at the time the account was opened. Mona died in June, 1978, at which time the account had a balance of $37,335.63.

Rufus Burrus was appointed the executor of Mona Miles, and, about a month after her death wrote to Blue Valley requesting that the funds in this account not be paid out because there was a question as to the ownership of such account.

Blue Valley thereafter filed this interpleader suit. Burrus filed a cross petition in which it was alleged the so-called trust established in the account was invalid because it was a testamentary disposition. Sherman Miles also filed a pleading in which he claimed to be the owner of the account.

Sherman Miles filed a motion for summary judgment and the court sustained that motion and dismissed the cross petition filed by Burrus.

■ Burrus first contends that the discretionary revocable trust agreement signed by Mona at the time the account was opened is invalid as a trust because it does not meet the requirements of a valid trust. As a part of this argument, Burrus contends the trust is invalid under the *Totten* trust doctrine because Missouri has not adopted that concept. This argument must fail because the St. Louis District, in *First Nat. Bank of Mexico v. Munns*, 602 S.W.2d 910, 913[1] (Mo.App.1980) clearly adopted the *Totten* trust doctrine as established in *In Re Totten*, 179 N.Y. 112, 71 N.E. 748, 752 (1904). The court in *Munns* quoted the familiar statement from *Totten* by which the tentative trust theory was adopted. The *Munns* court further held that this doctrine has been adopted in Missouri by § 369.179, RSMo 1978, so far as accounts in savings and loan associations are concerned. That section provides that a person who holds a certificate for an account indicating that such person is trustee for a beneficiary may be paid the amount in such account together with any dividends thereon in whole or in part. The section continues: "3. If such member dies, the association after thirty days from the date of death may treat as owner of the account, and may pay the withdrawal value thereof and dividends thereon to, the apparent or presumed beneficiary or beneficiaries, whether minor or adult, unless the association has acknowledged receipt at its home office of, or has been served there by an officer empowered to make service of process with, a written notice of a claim to the contrary; and the receipt or acquittance of such payee or payees shall be, to the extent of such payment, a valid and sufficient release and discharge of the association. 4. This section, except the first sentence, . . . (3) Is enacted for the protection of the association and is not determinative of the rights of persons interested in such account as between themselves."

It is true that a trust established under the *Totten* doctrine does not comply with the traditional rules for the establishment of a trust. However, that is the very reason the court in *Totten* adopted the doctrine. The court was confronted with the fact that many people open savings or bank accounts in their name as trustee for another as beneficiary. Rather than try to force this type of account into a traditional mold, the court simply adopted the theory that such account creates a tentative trust during the lifetime of the depositor and that such tentative trust may be revoked in whole or in part as the depositor-trustee makes withdrawals from the account, or makes a complete gift of the account during his lifetime. However, the *Totten* doctrine provides that in case the depositor dies before the beneficiary and prior to revocation of the tentative trust, or some decisive act or declaration of disaffirmance, then the courts presume that an absolute trust was created as to the balance at the time of death of the trustee. This doctrine has received wide acceptance. *Munns, supra; First Federal Sav. & L. Ass'n of Evansville v. Baugh*, 160 Ind.App. 102, 310 N.E.2d 101 (1974); *Seymour v. Seymour*, 85 So.2d 726 (Fla. 1956); *In Re Jeruzal's Estate*, 269 Minn. 183, 130 N.W.2d 473 (1964); *Leader Federal Sav. & L. Ass'n of Memphis v. Hamilton*, 46 Tenn.App. 368, 330 S.W.2d 33 (1959); *Bierau v. Bohemian Building, Loan and Savings Ass'n*, 205 Md. 456, 109 A.2d 120 (1954); *In Re Madsen's Estate*, 48 Wash.2d 675, 296 P.2d 518 (1956); *Wilder v. Howard*, 188 Ga. 426, 4 S.E.2d 199 (1939); Bogert on Trusts & Trustees 2d, § 47, p. 335; and Restatement (Second) of Trusts, § 58, p. 156–7.

Even in New Jersey, New Hampshire and Connecticut the *Totten* trust doctrine was adopted by the legislature after having been rejected by the courts. In fact, at this time virtually the only state which refuses to recognize the *Totten* doctrine is Ohio. *In Re Hoffman's Estate*, 175 Ohio St. 363, 195 N.E.2d 106 (1963).

It is apparent that the court in *Munns* was following the vast majority of the states when it fully recognized the Totten trust doctrine as being applicable in Missouri. Further, the court recognized the application of that doctrine in this state is mandated by § 369.179. There can be no doubt

that the account established by Mona constituted a *Totten* trust and on her death, without any showing that the trust had been revoked, it is presumed that an absolute trust was created as to the balance at her death.

Burrus argues that even if the *Totten* trust doctrine is applicable in Missouri, such doctrine does not prevail so as to constitute Sherman as the owner of the account because this would accomplish a testamentary disposition of the account in violation of the Statute of Wills. *Bogert* discusses this argument at § 47, p. 343, as follows: "The current case law is nearly unanimous in holding that the bank account trust passes a present, though defeasible, interest to the beneficiary, and so the transaction is not testamentary in character." Such a trust has been held not to violate the Statute of Wills in the following cases even though no statute had adopted the *Totten* trust doctrine. *Hamilton, supra*, at 44; *Bierau, supra*, at 122[2–6]; *In Re Madsen's Estate, supra*, at 520[7]; and *Wilder, supra*, at 203[5–7].

In Comment b to § 58 of the *Restatement*, it is stated: "b. *Validity of tentative trust.* In spite of the fact that in creating a *Totten* trust the settlor reserves practically complete control over the deposit as long as he lives, the disposition is not invalid as a testamentary disposition. The courts have upheld these trusts as a convenient method of disposing of money, and have held that the disposition is valid even though there is no compliance with the requirements of the Statute of Wills."

■ This court holds that the transfer of ownership of the account to Sherman on the death of Mona does not violate the Statute of Wills. It is apparent that an interest in the account passed to Sherman on its creation even though such interest was defeasible. Thus, Sherman's rights existed prior to the death of Mona, and did not arise at or after her death. Furthermore, an integral part of the *Totten* trust doctrine calls for the ownership to pass to the beneficiary on the death of the trustee absent evidence to show a contrary disposition had been made. This court adopts § 58 of the *Restatement,* and with that Comment b, which provides that such transfer does not violate the Statute of Wills.

■ Burrus finally argues that § 369.179 is not determinative of the issue here because as stated in ¶ 4(3) the statute was adopted for the protection of the savings and loan association and not for the determination of the rights of persons in the account. Obviously the statute does not conclusively vest title in the account in the beneficiary. However, an integral part of the *Totten* trust doctrine is that the beneficiary becomes the owner of the account on the death of the trustee, absent evidence that the trust has been revoked or some decisive act or declaration or disaffirmance of the trust has occurred. The fact that this section is stated to have been adopted for the protection of savings and loan associations does not take away the operation of the *Totten* trust doctrine. It simply means that the statute does not conclusively vest title in the beneficiary and evidence may be introduced under the *Totten* trust doctrine to show that the trust has been revoked or disaffirmed.

Much the same argument was confronted in *Seymour,* and the court concluded that the fact that the statute was adopted primarily to regulate banks simply meant that the ownership of the beneficiary was not made conclusive by the statute, but that under the Totten trust doctrine ownership of the account would pass to the beneficiary on the death of the trustee without any evidence of revocation.

This court holds that the *Totten* trust doctrine has been fully adopted in Missouri, both by statute and judicial decision. In this case, under the undisputed facts, Mona opened an account in her name as trustee for Sherman as beneficiary. On her death, absent any evidence to show a revocation or disaffirmance of the tentative trust thereby created, an irrevocable trust came into being. Under *Totten* Sherman became the owner of the account at that time. The court correctly declared Sherman to be the

owner of the account. The judgment is affirmed.

All concur.