**Jimmie Ray SPAIN, Plaintiff-Appellant,**

v.

**MADAM LAURA, a/k/a Dorothy Adams, etc., Defendant-Respondent.**

**No. 42888.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 1, 1981.

E. D. Lofftus, Fenton, for plaintiff-appellant.

Daniel V. O'Brien, St. Louis, for defendant-respondent.

GUNN, Judge.

The central query in this bizarre apologue of profligacy is how far can a fortune teller be trusted with a fortune? Plaintiff's mother was apparently euchred out of her fortune by defendant, Madam Laura, a druid, allegedly bearing many appellations, *e.g.*, Madam Belle, Reverend Laura, Madam Bishop, Miss Lorraine, etc.[1] In 1972, plaintiff's mother visited Madam Laura and was given assurance that by certain divination she could be cured of illness and expurgated of her foes. The mother was fain to do Madam Laura's bidding, and an egg from home rubbed on her body cured her of illness. Purging her of her adversaries was not such an easy task, but mightily expensive. In a tale reminiscent of *The Adventures of Tom Sawyer* and Huck Finn's rem-

---

1. Apparently, defendant's true name was an unsophisticated Dorothy Adams.

edy for warts, plaintiff's mother gave Madam Laura a total of $28,000, primarily in $100 dollar bills, which the latter was to burn and bury the ashes in a graveyard at midnight. The record is not clear whether this action rid plaintiff's mother of her enemies. It certainly caused her to part with her money.[2]

Some two years after her money was gone, plaintiff's mother related the episode to plaintiff who brought this suit against Madam Laura in an "Action For Money Had And Received". The theory of plaintiff's case was that the $28,000 had been given him as a gift by his mother or that it was being held in trust for him in savings and loan accounts. In any event, it was the plaintiff's contention that the money was his.

At the close of plaintiff's case, the trial court concluded that the plaintiff was not the real party in interest and had no standing to bring the action as he had no interest in the money, either as a gift or being held in trust. The cause was thereby ordered dismissed. We affirm the trial court's action.

 If anything is clear, it is the fact that plaintiff had no legal interest in the money at the time he brought suit. Naturally, he had an emotional interest in the departed funds, but that is all. The money had been primarily earned by the plaintiff's father, who had died in 1971, with the money passing on to the mother. The record contains evidence as to only one savings and loan account and reflects that a major portion of the money—at least $26,000—was held in an individual "discretionary revocable trust account", with the mother as trustee for the plaintiff. Under the account, the mother was the only person who could withdraw money; the plaintiff could not. The mother could revoke the trust at any time and by her withdrawal of funds did absolutely revoke it, leaving the plaintiff with no possessory interest in the account. *First National Bank of Mexico v. Munns*, 602 S.W.2d 910, 915 (Mo.App.1980). *See also Blue Valley Federal Savings and Loan Ass'n v. Burrus*, 617 S.W.2d 111 (Mo.App. 1981), affirming the doctrine of *Munns*, and specifically holding that in the event the trustee dies prior to revocation of the trust by expenditure or otherwise, the beneficiary obtains title to the trust funds.

 In this case, there was obviously no intention to make a gift to the plaintiff nor any delivery or acceptance of the property; thus, there was no gift. *In re Estate of Evans*, 614 S.W.2d 315, 317 (Mo.App.1981). As plaintiff had no interest in the funds by gift or otherwise, any trust having been revoked by withdrawal, the trial court properly found that plaintiff was without any interest and had no standing to sue. *Janssen v. Guaranty Land Title Co.*, 571 S.W.2d 702, 706 (Mo.App.1978); Rule 52.01.

Judgment affirmed.[3]

CRIST, P. J., and SMITH, J., concur.

---

2. By wheedling, plaintiff's mother was able to get back $1,000 of the $28,000—not a salutary result for her.

3. "An inheritance may be gotten hastily at the beginning; but the end thereof shall not be blessed." *Proverbs* 20:21. "To everything there is a season and a time to every purpose under the heaven: . . . a time to get, and a time to lose; a time to keep, and a time to cast away." *Ecclesiastes* 3:1 and 6. "Wisdom is good with an inheritance; and by it there is profit to them that see the sun." *Ecclesiastes* 7:11.