Vernon E. TYLER, Appellant,

v.

**CITIZENS HOME BANK OF GREEN-FIELD, Missouri, Respondent.**

No. 13225.

Missouri Court of Appeals,
Southern District,
Division One.

April 27, 1984.

Joseph B. Phillips, Sam Hopkins, Stockton, for appellant.

Donald W. Jones, Jones, Keeter, Karchmer, Nelms, Sullivan & Kirby and John K. Hulston, Springfield, for respondent.

CROW, Judge.

Appellant ("Tyler") sued three defendants: Eugene Eisert ("Eugene"), Eugene's wife, Katherine N. Eisert ("Katherine"), and Citizens Home Bank of Greenfield, Missouri ("the Bank").

The Bank filed a motion to dismiss Tyler's petition for failure to state a claim upon which relief can be granted, Rule 55.27(a)(6),[1] or for summary judgment in favor of the Bank on the ground that there were no genuine issues of material fact and the Bank was entitled to judgment in its favor as a matter of law, Rule 74.04(c).

After arguments on the motion, the trial court entered an order providing, in pertinent part:

"Now on this day, the court finds that plaintiff has failed to state a cause of action against defendant Citizens Home Bank of Greenfield, Missouri upon which relief can be granted. The court dismisses the action against defendant Citizens Home Bank of Greenfield, Missouri and pursuant to Missouri Supreme Court Rule 81.06 designates that this order is a final judgment for purposes of appeal."

Tyler appeals from that order.[2]

Before considering the merits, one procedural matter requires attention. The Bank served interrogatories on Tyler, and one of his attorneys answered them.[3] The Bank's brief asserts that the trial court, in making its ruling, relied on the facts supplied by those answers. Therefore, says the Bank, the order appealed from should be treated as one granting summary judgment.

We disagree. The order states in unmistakable terms that the dismissal is on the ground that Tyler failed to state a cause of action against the Bank upon which relief can be granted. Nothing in the order or in the record before us suggests that the trial court intended to grant summary judgment, or that the trial court relied on anything established by the answers to the Bank's interrogatories. The record is barren of any indication that the trial court meant to make any ruling other than the one it explicitly made.

Consequently, we decide only whether Tyler's petition, construed liberally and favorably to Tyler, giving the averments the benefit of all inferences fairly deducible from the facts stated, pleads a cause of action against the Bank. *Kirkwood-Easton Tire Co. v. St. Louis County*, 568 S.W.2d 267, 268–69 (Mo. banc 1978); *Scheibel v. Hillis*, 531 S.W.2d 285, 289[11] (Mo. banc 1976).

So construed, Tyler's petition alleges:

1. Tyler was the beneficiary of a trust established on July 20, 1977, by Nina Eisert Bowles ("Nina"), the trust corpus being a savings certificate issued by Systematic

---

1. Rule references are to Missouri Rules of Civil Procedure (14th ed. 1983).

2. Although Tyler was presumably entitled to an opportunity to amend his petition after the trial court sustained the Bank's motion to dismiss, Rule 67.06, nothing in the record indicates Tyler requested leave to do so, and he does not complain on this appeal that he sought, but was denied, leave to amend. Inasmuch as the trial court did not specify that the dismissal was without prejudice, it appears the dismissal was with prejudice. Rule 67.03. However, we need not, and do not, decide that, as the order is appealable either way. *Parker v. Sherman*, 456

S.W.2d 577, 578[1] (Mo.1970); *Frank v. Sinclair Refining Co.*, 363 Mo. 1054, 256 S.W.2d 793, 796 (1953); *Heard v. Frye's Estate*, 336 S.W.2d 729, 730[1] (Mo.App.1960); *Hasemeier v. Smith*, 361 S.W.2d 697, 699[1, 2] (Mo. banc 1962); *Hill v. General Motors Corp.*, 637 S.W.2d 382, 384[1] (Mo.App.1982).

3. Though Rule 57.01(a) provides that interrogatories are to be answered by the *party* served, there is no indication that the Bank raised any issue in the trial court about the interrogatories being answered by the attorney instead of Tyler.

Savings and Loan Association of Springfield, Missouri ("Systematic"). Nina and Eugene were "co-trustees" of the trust.

2. On or about May 12, 1980, Eugene and Katherine owed a debt to the Bank. On that date, Eugene and Katherine prevailed upon Nina, a 90-year-old widow, to pledge the savings certificate as security for a loan of $10,530. The loan was evidenced by a note dated May 12, 1980, signed, "Nina Bowles and Eugene Eisert as co-trustees for Vernon E. Tyler."

3. The proceeds of the loan were received in a check payable to Nina and Eugene as co-trustees for Tyler. (Although not spelled out in the petition, it is readily inferable that the loan was made by Systematic and that the check for the loan proceeds was issued by Systematic.)

4. The check was "negotiated" the following day (May 13, 1980) at the Bank, the proceeds thereof being applied by the Bank toward satisfaction of the debt owed it by Eugene and Katherine.

5. At the time of these events, Nina was inexperienced in business and unable to understand the consequences of her acts, and Eugene and Katherine exercised undue influence over Nina in causing her to revoke the trust in favor of Tyler and to divert trust funds of $10,530 to Eugene and Katherine for their personal use.

6. The Bank failed to act in good faith in negotiating the check, in that the Bank was placed on notice by the wording on the check that the Bank was dealing with a trust account and had actual knowledge that the proceeds of the check were being used toward payment of the debt owed by Eugene and Katherine. In addition, the Bank failed to determine whether Nina understood the transactions and was competent to fully understand the result of her acts.

The prayer is for $10,530 actual damages and $200,000 punitive damages, together with interest and costs.

At the outset, one might ask whether Tyler's suit is premature, as his petition does not allege there was a default in payment of the note to Systematic, thereby triggering a forfeiture of the pledged savings certificate. It could be argued that if the note to Systematic were paid in full, by funds other than trust funds, and the savings certificate thereby released from the pledge, Tyler would sustain no damage (assuming the savings certificate continued to earn interest throughout the duration of the pledge).[4] Accordingly, we must determine whether the existence of that possibility is fatal to Tyler's claim against the Bank. In doing so, it is essential to take note of the relationship between trustees and beneficiaries.

■ Trustees owe undivided loyalty to the trust and to the beneficiaries thereof; trustees are to act exclusively in the beneficiaries' interest and refrain from engaging in self-dealing. *Hillyard v. Leonard*, 391 S.W.2d 211, 224 (Mo.1965); *American Cancer Society, St. Louis Division v. Hammerstein*, 631 S.W.2d 858, 863[4] (Mo. App.1981).

■ One of the duties owed a beneficiary by his trustee is the duty to use reasonable care and skill to make the trust property productive. Restatement (Second) of Trusts § 181 (1959).

■ If, as Tyler alleges, he was the beneficiary of a trust, with Nina and Eugene being the trustees, and if Nina and Eugene borrowed money using trust property as collateral—whether they were authorized to do so or not—it is axiomatic that they owed Tyler the duty of using the borrowed money for purposes productive to the trust and exclusively for Tyler's benefit. It is, of course, evident that use of the borrowed money to pay a debt owed the Bank by Eugene and Katherine, for which Tyler was in no way liable, would be unproductive for the trust and of no benefit to Tyler.

---

**4.** Tyler's brief states the note to Systematic was not paid, and the savings certificate which was pledged as security was foreclosed, thereby destroying the corpus of the trust. These allegations, however, do not appear in Tyler's petition, consequently we do not consider them in determining whether the petition states a cause of action.

Consequently, Tyler's petition alleges facts which, if true, establish a prima facie case of breach by Nina and Eugene of the fiduciary duty owed Tyler.

▉ Pertinent to Tyler's claim against the Bank, it has been held that if an agent or fiduciary transfers property of his principal or beneficiary to a third person in payment of the personal indebtedness of himself or another, the principal or beneficiary may recover the amount thus paid if the person receiving the payment accepted it with knowledge, or was put upon notice by appearances and circumstances, that the payer was thereby committing a breach of his duty as agent or fiduciary. *Columbia Casualty Co. v. County of Westmoreland,* 365 Pa. 271, 74 A.2d 86, 88[2] (1950).

▉ Tyler's petition, as previously noted, alleges the check issued by Systematic for the loan proceeds was payable to Nina and Eugene as co-trustees for Tyler, and that this was sufficient to place the Bank on notice that it was applying Tyler's trust funds toward payment of the debt of Eugene and Katherine.[5] We are therefore persuaded that if the actions of Nina and Eugene indeed constituted a breach of their fiduciary duty to Tyler, and if, as Tyler alleges, the Bank knew the funds it applied to the payment of the debt of Eugene and Katherine were Tyler's trust funds, Tyler has a cause of action against the Bank for recovery of the funds, and he need not allege that the pledged certificate at Systematic was lost through foreclosure of the pledge.

On the issue whether the Bank knew the $10,530 check represented trust funds, the Bank argues there are no allegations in Tyler's petition demonstrating any factual basis for inferring bad faith or lack of good faith on the part of the Bank in applying the proceeds of the check to discharge the debt of Eugene and Katherine. The Bank, relying on the Uniform Fiduciaries Law, §§ 456.240–.350, RSMo 1978, states it is entitled to presume that persons who are fiduciaries act in good faith. The Bank cites us specifically to § 456.280; however, that section is inapplicable, as it pertains to a check or bill of exchange drawn by a fiduciary. The $10,530 check was drawn by Systematic, not by Nina or Eugene.

The section pertinent here is § 456.260, which provides:

"If any negotiable instrument payable ... to a fiduciary as such is endorsed by the fiduciary, ... the endorsee is not bound to inquire whether the fiduciary is committing a breach of his obligation as fiduciary in endorsing or delivering the instrument, and is not chargeable with notice that the fiduciary is committing a breach of his obligation as fiduciary unless he takes the instrument with actual knowledge of such breach or with knowledge of such facts that his action in taking the instrument amounts to bad faith. *If, however, such instrument is transferred by the fiduciary in payment of ... a personal debt of the fiduciary to the actual knowledge of the creditor, ... the creditor ... is liable to the principal if the fiduciary in fact commits a breach of his obligation as fiduciary in transferring the instrument.*" (Emphasis added.)

We have already pointed out that Tyler's petition alleges the $10,530 check was payable to Nina and Eugene as co-trustees for Tyler. A check so payable is payable "to a fiduciary as such," within the meaning of

5. In *Metro Trust Co. v. Northwestern Savings & Loan Assoc.,* 654 S.W.2d 631 (Mo.App.1983), a mother of two minor children opened a savings account for each child in a savings and loan association. Each account was in the name of the mother as custodian for the respective child under the Uniform Gifts To Minors Law. The mother, in her individual capacity, borrowed money from the savings and loan association, pledging the savings accounts as security for repayment. On one occasion she withdrew funds from one account and used them to repay one of the loans. It was held that when the mother made the collateral pledges, and when she withdrew the money to pay off the loan, she breached her fiduciary duty as custodian. It was further held that when the savings and loan association authorized collateral pledge of the accounts and the withdrawal to pay the loan, it had actual knowledge of the mother's breach of her duty as custodian, and could be held liable to the beneficiaries. *Id.* at 634–35.

§ 456.260. *See State ex rel. Strohfeld v. Cox*, 325 Mo. 901, 30 S.W.2d 462, 465–66[12] (banc 1930). Tyler's petition further alleges that the Bank applied the proceeds of the check toward satisfaction of a debt owed the Bank by Eugene and Katherine. This allegation is sufficient to plead actual knowledge of the creditor (the Bank) that the check was transferred by the fiduciaries (Nina and Eugene) in payment of a personal debt of one of the fiduciaries (Eugene), within the meaning of § 456.260. Construed liberally and favorably to Tyler, the petition alleges that in transferring the $10,530 check to the Bank to pay the personal debt of Eugene and Katherine, Nina and Eugene breached their fiduciary obligation to Tyler. We therefore reject the Bank's contention that the Uniform Fiduciaries Law insulates the Bank from liability to Tyler under the allegations in his petition. Accordingly, the trial court's dismissal of Tyler's petition cannot be sustained on that ground.

The Bank proffers another basis for upholding the trial court's order of dismissal, arguing that Tyler's petition is self-defeating, in that it alleges Eugene and Katherine caused Nina to revoke the trust and to divert the funds therein to them for their personal use. The Bank contends that the trust was a "Totten" trust and that Nina had provided all of the funds for it. Therefore, says the Bank, Nina had the right to revoke the trust, and did so when she and Eugene pledged the savings certificate to Systematic as security for the $10,530 loan. The result of this revocation, according to the Bank, was that the proceeds of the loan were not "trust" funds, consequently the Bank incurred no liability to Tyler in applying those proceeds (the $10,530 check) to the debt owed it by Eugene and Katherine.

In support of this contention, the Bank cites *First National Bank of Mexico v. Munns*, 602 S.W.2d 910 (Mo.App.1980). *Munns*, which involved a Totten trust in a certificate of deposit, held that the trustee revoked the trust when he pledged the certificate as security for a personal loan made to him, thus the lender acquired the pledged certificate free of the rights of the trust beneficiaries, and was entitled to the certificate when the trustee defaulted on the loan. *Munns*, of course, differs from the instant case in that here, the savings certificate was not pledged to the Bank. Instead, the certificate was pledged to Systematic as security for the loan that Systematic made to Nina and Eugene, and it was the *proceeds* of that loan that were received by the Bank.

■ Whether, under the holding in *Munns*, Nina and Eugene revoked the trust by pledging the savings certificate to Systematic is an issue we need not decide. There are no allegations in Tyler's petition establishing that the trust was a Totten trust.[6] Absent such averments, it is unnecessary to determine whether the Bank would be free from liability to Tyler under that supposition. If, on remand, it appears to the satisfaction of the trial court that there is no genuine issue about the trust being a Totten trust and that the Bank is entitled to judgment in its favor as a matter of law, summary judgment would be an appropriate method of resolving the issues between Tyler and the Bank.

As to the Bank's contention that Tyler pleaded himself out of court by alleging that Nina revoked the trust, we do not accept the Bank's interpretation of Tyler's petition. The Bank would read the petition as pleading that Nina revoked the trust, thereby destroying Tyler's interest in the savings certificate and transforming the loan proceeds into separate property of Nina and Eugene. We believe that Tyler's petition, considered in its entirety and construed liberally and favorably to him, pleads that Nina and Eugene breached their fiduciary duty to Tyler by pledging the savings certificate as security for the loan and diverting the loan proceeds to an unauthorized use. It may ultimately be established that Nina and Eugene breached no fiduciary duty to Tyler by their actions

---

6. The Bank contends that facts sufficient to prove the savings certificate was a Totten trust are established by its interrogatories to Tyler, and the answers thereto. However, as emphasized in footnote 4, *supra*, we decide this appeal solely on the allegations in Tyler's petition.

of May 12 and 13, 1980, and that the effect of what they did was to revoke the trust and divest Tyler of all interest therein. However, we reject the Bank's contention that Tyler's petition should be construed as alleging such facts.

The trial court's order dismissing Tyler's petition as to the Bank is reversed and the cause is remanded.

GREENE, C.J., FLANIGAN, P.J., and TITUS, J., concur.