**Nancy HUBER and Rita Huber, Plaintiffs/Appellants,**

v.

**MAGNA BANK OF MISSOURI, R. William Breece, Jr., and Brad A. Sandler, Defendants/Respondents.**

No. 71338.

Missouri Court of Appeals, Eastern District, Division One.

Oct. 21, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 8, 1998.

Application for Transfer Denied Feb. 24, 1998.

Canice Timothy Rice, Jr., St. Louis, for plaintiffs/appellants.

Gallop, Johnson & Neuman, Michael A. Kahn, David A. Streubel, St. Louis, Peter T. Wendel, Thousand Oaks, CA, for Magna Bank.

PUDLOWSKI, Judge.

Nancy Huber and Rita Huber (Appellants) filed suit against R. William Breece, Jr. (Breece) and Brad A. Sandler (Sandler) claiming Breece and Sandler committed legal malpractice by breaching their fiduciary duty to Appellants. Appellants also filed suit against Magna Bank of Missouri f/k/a Landmark Bank (Bank) claiming the Bank entered into a loan transaction with Appellants' trustee and knowingly facilitated the trustee's breach of fiduciary duty. Appellants seek to recover trust proceeds lost by their trustee through a real estate investment.

The trial court granted Breece and Sandler's motion for summary judgment which claimed no attorney-client relationship existed between themselves and Appellants. Bank also filed a motion for summary judgment claiming it was not liable for the trustee's misconduct, it did not have actual knowledge of the trustee's breaches nor did it have a duty to inquire pursuant to Section 456.560 RSMo (1994).[1] The trial court denied Bank's summary judgment motion and granted additional time for discovery by Appellants. Following the close of discovery, the trial court granted Bank's second motion for summary judgment. Appellants appeal the trial court's entry of summary judgment in favor of Breece and Sandler and Bank. We find no error in the trial court's grant of the summary judgments; affirmed.

Each Appellant is the beneficiary of a trust established by their mother in the 1960's at the Clayton Trust Company. Larry Brown (Brown), the company's vice-president, was assigned to manage both of the trusts. When Appellants reached the age of majority, each transferred the funds into a living trust for her own benefit rather than receiving the trust proceeds. Subsequently, Brown left the trust company. He contacted Appellants seeking to also move their trusts. Appellants both signed trust agreements naming Brown as trustee.

The trust agreements granted Brown broad discretionary powers to manage their trusts. They specifically empowered Brown, as trustee and without limitation, to invest in real estate, participate in business as a partner and "borrow money at interest and to assume indebtedness and encumber Trust property by mortgage or pledge." The trusts further allowed Brown to invest in "any other kind of real or personal property or business interest without being limited by any statute or rule of law concerning proper investments for trustees." In addition to granting broad powers to Brown, the trust expressed that no third party dealing with the trustee would be required to inquire into the powers of the trustee.

During 1985, Brown retained attorneys Breece and Sandler to form Westport Place Associates (WPA), a limited partnership, for the purpose of purchasing real estate. WPA would consist of forty limited partners each investing a total of twenty thousand dollars. Brown would act as WPA's general partner. Breece and Sandler assisted in the formation of WPA and helped close on real estate which would be the principal asset of the partnership. Neither Breece nor Sandler had contact with WPA after 30 August 1985.

On 5 March 1985, Brown, acting as an individual, contracted to purchase LaMaison Village, a 56–unit apartment complex. Within the next month, Brown met with Bank to secure financing for the proposed purchase. Brown sought to borrow two million dollars from Bank and another half million dollars from other sources. Brown projected that the apartment complex would lose money for the first thirty months of operation, but these losses would be set off by three years of contributions by WPA investors.

Though Brown rejected Bank's first proposed financing because the loan carried a high interest rate, they continued negotiating until arriving at a mutually acceptable arrangement. The terms of the loan included a one million dollar loan from Bank with a lower interest rate; a first deed of trust against the apartment complex; a security interest in the fixtures, equipment and as-

---

1. Bank omits the year of Section 456.560 in its brief and motion for summary judgment. In order to provide a full citation, we have cited to Section 456.560 RSMo (1994) since there is no history of statutory revision of this section.

signments of WPA investors' notes; and Brown's personal guarantee. Bank agreed to these loan terms as long as the loan transaction would be completed by 30 June 1985.

Brown failed to attract the necessary number of investors by 27 June 1985. At that point in time, Brown could have elected to abandon his investment and recover his earnest money deposit from the land contracts. However, he chose to extend the closing date by thirty days until 30 July 1985. To secure the additional time, Brown was required to pay an additional one hundred thousand dollars which was subject to forfeiture if Brown failed to attract the needed investors.

By 19 August 1985, Brown informed Bank he had stopped syndication of WPA but wished to borrow two million dollars until he could obtain permanent financing for the project. Brown further indicated WPA would be formed with only the limited partnerships of the two Huber trusts. Before closing on the loan, Bank's counsel reviewed documents indicating the trusts were valid and Brown, as trustee, had the broad discretionary power to invest and use trust property as collateral.

Brown signed the amendment to WPA on 30 August 1985 indicating he was the general partner and Appellants' trusts were limited partners. Brown signed this amendment three times: in his individual capacity, as trustee for Rita Huber, and as trustee for Nancy Huber. The amendment further stated the contributions of the limited partners were paid in full. ·

Unfortunately for Appellants, the investment began to sour. Brown continued using the trust res in repayment of the loan to Bank. WPA defaulted by 16 January 1989. Within eight days, Bank accelerated all principal and interest of the loan and made demand upon Appellants' trusts.

Appellants sought independent legal counsel for the first time regarding the management of their trusts. They sued Brown and each obtained a judgment in excess of one million dollars. Brown is currently in a federal penitentiary serving sentences for state and federal crimes related to his management of the trusts. Appellants now seek to recover from Bank as well as from Breece and Sandler.

## Summary Judgment

In review of summary judgment, we review the record in the light most favorable to the party against whom the judgment was entered. *ITT Commercial Finance v. Mid-America Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is intended to move the parties beyond the petition allegations and determine if a material fact for trial exists. *Martin v. City of Washington*, 848 S.W.2d 487, 491 (Mo. banc 1993). Appellate review of the grant of summary judgment is purely a question of law and, hence, uses the same criteria as imposed by the trial court in its initial determination of the propriety of the motion. *ITT Commercial Finance*, 854 S.W.2d at 376.

Summary judgment will be granted as a matter of law to the moving party when there is no genuine issue as to any material fact. Rule 74.04(c)(3). The moving party bears the burden of establishing a right to judgment as a matter of law; any evidence presented that demonstrates a genuine issue of material fact will defeat the moving party's prima facie showing. *Landes v. State Farm Fire and Casualty Company*, 907 S.W.2d 349, 353 (Mo.App. W.D.1995). An issue is genuine only if it is real and substantial; it may not consist "of conjecture, theory and possibilities." *ITT Commercial Finance*, 854 S.W.2d at 378.

Following the moving party's prima facie showing for its summary judgment motion, summary judgment will be granted if the responding party fails to reply with specific facts showing a genuine issue of material fact exists for trial or with a demonstration that judgment as a matter of law is incorrect. Rule 74.04(e). Once the moving party has established right to judgment as a matter of law, the non-moving party's only recourse is to show that there is a genuine dispute of a material fact by offering affidavits, depositions, answers to interrogatories, or admissions. *ITT Commercial Finance*, 854 S.W.2d at 381.

## Breece and Sandler's Summary Judgment Motion

In their motion for summary judgment, Breece and Sandler assert Appellants

have insufficient evidence to support a claim of legal malpractice. To succeed on a theory of legal malpractice, Appellants must plead and prove: that an attorney/client relationship existed; the attorney was negligent or in breach of contract; those acts proximately caused appellants' damages; and but-for such conduct appellants would have been successful in the prosecution of the underlying claim. *Boatright v. Shaw*, 804 S.W.2d 795, 796 (Mo.App. E.D.1990). For Appellants to support the first element of their legal malpractice claim, either there must be an attorney-client relationship as a matter of fact between Appellants and Breece and Sandler or a relationship in which Breece and Sandler's services were specifically intended to benefit Appellants. *Donahue v. Shughart, Thomson & Kilroy, P.C.*, 900 S.W.2d 624, 628 (Mo. banc 1995). Appellants concede they neither hired nor relied on Breece and Sandler's legal advice. In addition, Appellants must set fourth specific facts showing that there is a genuine issue of material fact for trial. Appellants failed to do so. *Martin*, 848 S.W.2d at 492. Appellants may not rely on their mere allegations when faced with a properly plead summary judgment motion. *Id.* Point denied.

### Bank's Summary Judgment Motion

In its second motion for summary judgment, Bank asserted that Section 456.560 RSMo (1994) shields it from liability for Brown's misconduct. Section 456.560 RSMo (1994) provides that, "[w]ith respect to a third person dealing with a trustee or assisting a trustee in the conduct of a transaction, the existence of trust powers and their proper exercise by the trustee may be assumed without inquiry. The third person is not bound to inquire whether the trustee has power to act or is properly exercising the power; and a third person, without actual knowledge that the trustee is exceeding his powers...is fully protected in dealing with the trustee...." Appellants contend liability should be imputed to Bank because it had actual knowledge Brown breached his fiduciary duty by pledging trust property to the loan transaction.[2] *Tyler v. Citizens Home Bank of Greenfield*, 670 S.W.2d 954, 957 (Mo. App. S.D.1984).

The financial transaction proposed by Brown was an investment to benefit himself and Appellants. The terms of the transaction are unusual. Even though Bank was not under a duty to inquire into the scope of Brown's powers as trustee, Bank conducted a limited investigation. Bank correctly determined Brown was trustee of the trusts and the trusts were still in effect. Due to the broad language granting Brown virtually unlimited power as trustee, Bank, with the facts adduced, did not have actual knowledge that Brown was in breach of his fiduciary duties. Point denied. Judgment affirmed.

GRIMM, P.J., and GARY M. GAERTNER, J., concur.

---

**2.** At oral argument, the parties were asked to supplement their files in order to provide this Court with a complete record. Appellants filed a supplemental legal file which contained, among other things, their memorandum of law in opposition to summary judgment. Although documents submitted by Appellants had citations to "Tabs," we were unable to locate any tabs within the legal file.