## In the ESTATE OF Marie A. BISCHOF.

Marian A. McKEEVER and Walter W. Bischof, Personal Representatives of the Estate of Marie A. Bischof a/k/a Marie Antoinette Bischof, Deceased, Plaintiffs/Appellants,

v.

SHIRATI MENNONITE HOSPITAL, et al., Defendants/Respondents.

No. 55020.

Missouri Court of Appeals, Eastern District, Division Four.

May 2, 1989.

Garry Seltzer, Murphy & Seltzer, Clayton, for plaintiffs-appellants.

Stephen L. Beimdiek, St. Louis, for defendants-respondents.

SATZ, Judge.

In this discovery of assets proceeding, the trial court granted defendant a partial summary judgment, finding the decedent's trust agreements created Totten Trusts. Plaintiffs appeal. We affirm.

In her lifetime, decedent, Marie A. Bischof, opened twelve savings accounts, ten of which are in issue here. Eight of these accounts were opened at Roosevelt Federal Savings and Loan Association (Roosevelt), one at Conservative Federal Savings and Loan Association (Conservative) and one at Economy Savings and Loan Association (Economy). In each instance, decedent signed a "Trust Agreement" with the savings and loan association, naming herself as trustee and Shirati Mennonite Hospital of Tanzania (Shirati) as beneficiary.

Decedent never married, had no children and died intestate. As personal representatives of decedent's estate, plaintiffs brought an action for discovery of assets. Plaintiffs sought a court order declaring the money in the accounts to be assets of decedent's estate, ordering the savings and loan associations to pay the amounts over to the estate and declaring that no other party has any interest in the accounts. Plaintiffs alleged that decedent was "elderly and mentally infirm," she "never had the intent of benefiting the named alleged beneficiary" and her "intent was to benefit her heirs."

Defendant Shirati filed a motion for summary judgment, contending the accounts were Totten Trusts. The motion was based on the trust instruments and other material.[1] In opposing the motion, plaintiffs filed

---

**1.** Defendant did not make this "other material" part of the record on appeal. Thus, we do not

an affidavit of a "neighbor and friend" of decedent, in which the neighbor stated the decedent "intended that her relatives receive the money" and decedent "never intended to grant a beneficial interest in the certificates" to Shirati.

The trial court granted defendant's motion as to the ten accounts. Plaintiffs' appeal followed.

On appeal, plaintiffs make two basic arguments: (1) the decedent's intent in opening each savings account is an issue of fact which cannot be resolved solely from the language of the instrument used to open the account, and (2) if decedent's intent could be so resolved, it was put in issue again by the affidavit of decedent's "neighbor and friend." In either case, plaintiffs argue, the decedent's intent was not resolved and, therefore, the trial court could not properly conclude, as a matter of law, the savings accounts in issue were Totten Trusts.

■ Whether the instrument used to open a savings account creates a Totten Trust is an issue with an uncertain history in Missouri. Typically, the issue now arises when a person deposits cash in a savings account and directs the savings company or bank to entitle the account in the name of the depositor "as trustee" for another person. Bogert, *Trust and Trustees*, § 47 at 1–3 (Rev'd 2d Ed.1984). In Missouri, as in some other jurisdictions, we treat these transactions differently than the creation of an irrevocable trust. We treat the transaction as a Totten Trust. *E.g., Blue Valley Federal Savings and Loan Assoc. v. Burrus*, 617 S.W.2d 111, 113 (Mo.App.1981); *First Nat'l Bank of*

*Mexico v. Munns*, 602 S.W.2d 910, 913 (Mo. App.1980). Rather than being irrevocable, the trust is said to be a tentative trust, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration. *In Re Totten*, 179 N.Y. 112, 71 N.E. 748, 752 (1904); *Burrus supra* at 113; *Munns supra* at 913. "In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor." *Totten, supra* at 752; *Burrus, supra* at 113; *Munns, supra* at 913.

■ In opening each account at Roosevelt, decedent signed an instrument designated: "Revocable Trust Agreement." The instrument is a card, sometimes called a "signature card", with the terms of the Agreement printed on both sides of the card. The language of this agreement fits within the Totten Trust doctrine. Decedent is named as trustee for Shirati, the beneficiary. She controls the account during her lifetime, reserving the right to revoke the account. The trust is to continue until her death, at which time the balance in the account is transferred to the beneficiary.[2]

The actual language of the agreement, admittedly, is prolix and the syntax questionable. Nonetheless, the meaning is clear. We do not need to look to extrinsic evidence to aid us in interpretation. *See, e.g., First Nat'l Bank of Kansas City v. Hyde*, 363 S.W.2d 647, 653 (Mo.1962). Moreover, the meaning has an equally clear

consider it here. See *Hill v. Air Shields, Inc.*, 721 S.W.2d 112, 116 (Mo.App.1986).

**2.** The undersigned [Grantor(s)] agree(s) that the funds in this account, as it appears on the reverse of this instrument, together with all earnings thereon and any future additions thereto are conveyed to the Trustee[s] for the benefit of the beneficiary[ies] as specified herein. The conditions of this trust are: (1) The Trustee(s) shall hold, manage, invest and reinvest the trust funds in his [their] sole discretion. (2) The undersigned Grantor[s] reserves the right to revoke this trust in part or in full, at any time, and any partial or

complete withdrawal by [any of] the original trustee(s) if he is [one of] the Grantor(s) shall be a revocation to the extent of such withdrawal, but no other revocation shall be valid unless made in writing and written notice by [any of] the Grantor[s] is given to the Association. (3) This trust, subject to the above right of revocation, shall continue for the life of [until the death of] the Grantor [or survivor of the undersigned Grantor(s)] [whereupon] the trust shall terminate and the trust fund[s] shall be distributed [in equal shares] to the [then living] beneficiary[ies]....

legal effect. It presumptively creates a Totten Trust. *See Munns, supra* at 913.

■ Plaintiffs contend this presumption is rebuttable, and, they argue, the presumption is met by the affidavit of the decedent's neighbor. This, they argue, creates an issue of fact: the intent of the decedent. We disagree.

We need not reach the question of whether the presumption is rebuttable. The affidavit simply does not raise a question about the decedent's intent. In the affidavit, the neighbor states:

> I know [the decedent] opened the various certificates at issue here in an attempt to reduce her own taxes. [Decedent] never intended to grant a beneficial interest in the certificates to the Shirati Mennonite Hospital.
>
> [Decedent] intended that her relatives receive the money in the various certificates after death.

These statements are simply inferences drawn or conclusions reached without any supporting operative or evidentiary facts. They are not statements of "specific facts" which show there is a genuine issue for trial. Rule 74.04(e); *see, e.g., Landmark North County Bank & Trust Co. v. National Cable Training Centers,* 738 S.W. 2d 886, 890 (Mo.App.1987).

■ The instruments signed by the decedent in opening her accounts at Conservative and Economy, however, raise a different issue. These two instruments, each designated as a "Discretionary Revocable Trust Agreement," are essentially the same. At first, they both parallel the language of the Roosevelt instrument and, thus, in turn, parallel the language of a Totten Trust: decedent is named the trustee for Shirati, the beneficiary, and she controls the account during her lifetime, reserving the right to revoke the account. However, these instruments contain additional provisions which differ from both the Roosevelt instruments and the Totten Trust doctrine.[3] *See* Comment, *Missouri's Totten Trust doctrine,* 48 Mo.L.R. 495, 513 (1983).

First, they give the depositor/trustee the option to continue the trust after his death. They do this (a) by a provision that the trust shall continue after the depositor's death until the beneficiary has reached a specified age and (b) by a provision for an appointment of a successor trustee who will have the same powers as the depositor/trustee. *Id.* at 513. In contrast, the Totten Trust becomes irrevocable on the depositor's death. *Burrus, supra* at 113.

Second, they provide that if the beneficiary dies before reaching a designated age, the savings institution may deliver the balance remaining in the account to the beneficiary's heirs or the trustee on their behalf. The Totten Trust, however, provides that if the beneficiary predeceases the depositor, the trust is terminated and the balance remaining passes to the depositor's estate. *See* A. Scott, *The Law of Trusts,* § 58.4 at 215–16 (W. Frachter 4th ed. 1987); Restatement (Second) of Trusts, § 58 comment (c) (1959).

■ Third, they declare that unless the savings institution is given written notice of any revocation other than by withdrawal, the revocation will be invalid. A Totten Trust, however, can be revoked by any "decisive act or declaration of disaffir-

---

**3.** In pertinent part, these instruments provide:

(2) ... [Other than partial or complete withdrawal by the grantor/trustee,] no other revocation shall be valid unless written notice is given to the institution

.   .   .   .   .

(3) In the event of the death, resignation, removal, or incompetence of said trustee [decedent], ____ is appointed successor trustee, and in the event of his death, resignation, removal, or incompetence, ____ is appointed successor trustee, or in the event no successor trustee is named herein or the successor die[s]

[etc] ... the institution [Economy] is authorized to appoint a successor trustee, [who] shall have the powers of the original trustee;

(4) This trust, subject to the [Grantor's] right of revocation, shall continue for the life of the grantor and thereafter until the beneficiary is ____ years of age, or until his death if he dies before such age, and then the proceeds may be delivered by the association to the beneficiary, or to his heirs, or to the trustee on his or their behalf, and if the age of the beneficiary is not specified this trust is for twenty-one years; ...

mance." *See Totten, supra* at 752; *Munns, supra* at 915–16.

This form language, however, is general language, providing for contingencies which, understandably, would not be contemplated here and did not occur. First, in both instrument forms, blanks are provided for the age the beneficiary was to reach before the trust could be discontinued and for the name of the successor trustee. In the Conservative instrument neither of those blanks was filled in. The reasonable inference is that a successor trustee was not contemplated and the age of Shirati Hospital, an inanimate institution, would not be a relevant consideration.

Admittedly, in the Economy instrument, the blank for the age of the beneficiary is filled in with the figure "1". This can simply be explained by caution on the part of Economy. Moreover, Shirati exceeded the designated "age" at the time the trusts were established. Defendant's brief notes Shirati was founded in 1935, an assertion not challenged by plaintiffs. Thus, even if the age clause were applicable to the hospital, the trust would not continue beyond the decedent's death.

The failure to name a successor trustee, under a strict reading of the printed language, does authorize the savings institution to name a successor trustee, who would possess all the powers of the original trustee. Here, however, the trust does not continue until the beneficiary reaches a certain age; therefore, there is no need for the appointment of a successor trustee. The proceeds may be distributed upon the decedent's death.

Second, the printed provision requiring the savings institution to deliver the proceeds to the beneficiary's heirs or their trustee if the beneficiary dies before reaching a specified age, obviously, has no meaning here. As noted, the beneficiary is an inanimate institution without an animate life cycle.

Third, the limitation on the method of revocation is neither determinative nor significant. It is simply a protective device for the savings institution; a protective device which should have no greater legal effect on the nature of the account than other protective devices set out in our statutes governing deposits in savings institutions, *see, e.g.,* § 369.179.3 RSMo 1986, whose 1978 statutory predecessor was one of the statutes said to recognize or adopt the Totten Trust doctrine in Missouri. Section 369.179.3 RSMo 1978. *Munns, supra* at 913; *Burrus, supra* at 113.

In short, these deviations from a pure Totten Trust do not preclude us from applying the Totten Trust doctrine to the instruments of Economy and Conservative.

Plaintiffs rely on the reasoning used in *Ward v. Saranac Fed. Savings and Loan Assoc.*, 48 A.D.2d 337, 369 N.Y.S.2d 540 (1975). In *Ward*, the trust instruments purported to give to an unnamed successor trustee the same powers and control over the account that were retained by the depositor but imposed no active duties to benefit the beneficiaries. *Id.* at 541–42. The successor's only duty would be to hold the trust property until the beneficiary attained a specific age. Because of these provisions, which practically gave the successor "naked title" to the account, the court held the trusts must fail because they were "passive." *Id.* at 542. Moreover, the court added, the agreements could not create true Totten Trusts because the gifts to the beneficiaries did not become irrevocable "at the instant of the grantor's death." Id. at 543. The attempt to create inter vivos trusts having failed, the trusts could be upheld only as testamentary trusts. Since the statutory requirements for execution and attestation were not met, the court declared the trusts invalid and ordered the funds in the accounts to be distributed as part of the decedent's residuary estate. *Id.* at 543.

The instruments in question here are distinguishable from those in *Ward*. The beneficiary is not an individual who had yet to reach the specified age. Hence, there is no need for the appointment of successor trustees, and, thus, no cause for concern about such successors receiving "naked title" to the funds in the accounts. Moreover, we are not bound by the holding in *Ward;* nor are we persuaded by the New

York court's reasoning. Arguably, all Totten Trusts can be characterized as "passive." Yet, as noted, we have adopted the Totten Trust doctrine. *Burrus, supra* at 114.

In *Burrus,* the Court noted the popularity of savings account trusts and acknowledged the need for flexibility in upholding their validity. *Id.* at 113. Under the present facts, the Totten Trust doctrine is flexible enough to include the instruments here. We need not speculate on the outcome in a case where the trusts continued beyond the grantor's death.

Judgment affirmed.

SMITH, P.J., and GRIMM, J., concur.