929 F.Supp. 1272 (1996)
In re TICKETMASTER CORPORATION ANTITRUST LITIGATION.
No. 4:95 MDL 1033 SNL.
United States District Court, E.D. Missouri, Eastern Division.
May 31, 1996.
*1273 *1274 David W. Harlan, Partner, Michael A. Kahn, Gallop and Johnson, St. Louis, MO, Leonard B. Simon, Dennis Stewart, Milberg and Weiss, San Diego, CA, Gary E. Mason, Cohen and Milstein, Washington, DC, John J. Carey, Carey and Danis, St. Louis, MO, Tom Paige, Juan Montez, Hialeah, FL, Carlos Lidsky, Hialeah, FL, Charles Evans Gerber, Neal and Gerber, Chicago, IL, Leo Bueno, Miami, FL, Anthony D. Shapiro, Rohan and Goldfarb, Seattle, WA, Jonathan W. Cuneo, Cuneo Law Group, Washington, DC, Jonathan D. McCue, Charles T. McCue, McCue and McCue, San Diego, CA, Paul M. Weiss, Chicago, IL, for Ticketmaster Corp. Antitrust Litigation.

MEMORANDUM AND ORDER
LIMBAUGH, District Judge.
This matter is before the Court on the Defendant's Motions to Dismiss and the Defendant's Motion for Sanctions. The case involves allegations of nationwide antitrust violations that caused the Plaintiffs to pay, individually and as a proposed class, supra-competitive prices for large-scale popularmusic *1275 concert tickets.[1] The motions presented to the Court challenge the allegation for a failure to state a claim, a lack of jurisdiction and improper venue, and a challenge based on the law of the case doctrine.

Procedural History
On December 19, 1994, the Judicial Panel on Multidistrict Litigation (Panel) transferred sixteen cases to this Court. As the suits arrived in St. Louis over the next several months, it became clear that each one of the cases involved similar antitrust allegations against Ticketmaster, its President Frederic D. Rosen, its operating subsidiaries, the Promoters who work with Ticketmaster, a number of venues, Ticketmaster outlets, or major league sports teams in a variety of sports. In each suit, the Plaintiff was a ticket purchaser or group of ticket purchasers who had bought tickets through Ticketmaster.
Because of the unwieldy nature of the suits, the Court sent out an Order in June of 1995 to determine which parties remained in the suits from the transferor courts and to compile a list of the counsel of record. Before an initial pretrial hearing in August, the Parties entered appearances and filed proposed scheduling orders. Those were reviewed by the Court and used to develop a scheduling plan and a counsel committee with local liaisons. By the end of August, the parties had filed a Consolidated Complaint that superseded the variety of complaints that had been filed by different lawyers around the country. After further refinement, a Second Amended Consolidated Complaint (the Complaint) was filed at the end of September.
When the Complaint was filed, the Court was left with five cases and one Defendant. Eleven cases, Frederic D. Rosen, the promoters, venues, sports teams, and the operating agents of Ticketmaster had all been dismissed.
The Defendant attacks the Complaint with three separate motions to dismiss. The first motion addresses all pending cases, the second motion addresses three of the cases, and the last motion addresses only one case. After the matter was fully briefed, the Court granted the Parties' request for oral argument. Now that the Court has received the briefs, heard the oral argument, and received the post-argument filings, the motions are ripe for ruling.

Judicial Authority
Although none of the cases currently before the Court was originally filed in this district, this Court has jurisdiction as a result of the Panel's transfer order pursuant to 28 U.S.C. § 1407. When cases of similar factual and legal basis are filed in various jurisdictions, they are thoroughly reviewed by the Panel. If selected for consolidation, the Panel puts them in front of one court so that completion of pretrial proceedings may be handled efficiently. 28 U.S.C. § 1407(a). This procedure promotes economy of justice with quicker, less repetitive pre-trial proceedings. In re: Scotch Whiskey, 299 F.Supp. 543 (JPML 1969). While consolidated, this Court has complete jurisdiction over the suits. Upon completion of the pretrial, this Court may remand the cases to their original jurisdictions. In re: Delta Airlines, 411 F.Supp. 795, 797 (JPML 1976).

Substantive Motions

I. Failure to State a Claim
The Court will begin its examination with the comprehensive motion that challenges all pending cases for failure to state a claim under Rule 12(b)(6) FED.R.CIV.P.
In passing on a motion to dismiss, the Court must view the facts alleged in the Complaint in the light most favorable to the Plaintiffs. Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957); Toombs v. Bell, 798 F.2d 297, 298 (8th Cir.1986). The Court should not grant a motion to dismiss merely because the Complaint does not state with precision every element of the offense necessary *1276 for recovery. 5 Wright & Miller, Federal Practice and Procedure: Civil, Sec. 1216 at 120 (1969). A complaint is sufficient if it contains "allegations from which an inference can be drawn that evidence on these material points will be introduced at trial." Id. at 122-123. Moreover, a court should not dismiss a complaint unless it "appears beyond a reasonable doubt that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, supra, 355 U.S. at 45-46, 78 S.Ct. at 102.
The Court must view the Complaint in the light most favorable to the Plaintiffs and should not dismiss it merely because the Court doubts that the Plaintiffs will be able to prove all of the necessary allegations. Bennett v. Berg, 685 F.2d 1053, 1058 (8th Cir.1982). Thus, a motion to dismiss is likely to be granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir.1982). With this standard in mind, the Court turns to an examination of the Plaintiffs' Complaint.
The five-count Complaint begins with an introduction that alleges the Defendant colluded with venues to impose monopoly prices, colluded with venues and promoters to boycott performers who resisted its monopoly power, and unlawfully acquired its competitors. The Plaintiffs outline their knowledge of Ticketmaster's operating procedures and propose a definition of the relevant market and market actors. The market description shows that a ticketing system for large-scale popular-music events exists because Ticketmaster approaches venues and contracts to handle their ticket sales. As a part of this contract, the venues receive a fee and Ticketmaster distributes the venues' tickets to the Plaintiffs. These contracts may span a number of years and may limit the venues' ability to hire performers who will not allow the venues to use Ticketmaster's distribution service. These background allegations are incorporated into each one of the specific counts.
The first Count alleges a violation of Section 2 of the Sherman Act. It alleges that Ticketmaster attained and maintained monopoly power over the sale of tickets by acquiring long-term exclusive contracts with venue owners and concert promoters (86) and that the Plaintiffs have been forced to buy tickets from Ticketmaster at supracompetitive prices (88) which they pay directly to Ticketmaster. (94)
The second Count, which is also brought under Section 2 of the Sherman Act, alleges an attempt to monopolize. It alleges Ticketmaster and the venues have entered exclusive contracts that are designed to create the probability of eliminating competition in the market.(100) The resulting lack of competition has caused the Plaintiffs to pay supracompetitive prices.(102)
The third Count is brought under Section 1 of the Sherman Act and alleges price fixing. Again, Ticketmaster is alleged to have entered exclusive agreements with venues which allow it to operate its business as the monitor of a nationwide cartel of venues.(110)
The fourth Count, which is also brought under Section 1 of Sherman Act, alleges that Ticketmaster conspired with venues and concert promoters to boycott performers who want to reduce the total price of their tickets by forcing lower distribution service fees.(119) The alleged harm is that the Plaintiffs have not been able to enjoy these boycotted performers.(123)
The final Count alleges that Ticketmaster illegally acquired Ticketron, Pacer CATS, and other competitors. These illegal acquisitions have foreclosed entry into the market by competitors and slowed innovation in the industry.
The primary line of argument put forth by Ticketmaster to challenge the Complaint is that the Plaintiffs in this case lack standing because they cannot show sufficient direct link to the market to give them antitrust standing based on an antitrust damage.
Standing is a fundamental element of any suit. Before the Court can address the merits of the Plaintiffs' claims, it must find that the Plaintiffs have a legal right to bring those claims. Since it goes to the very power of the Court to act, standing must *1277 exist at all stages of the proceeding. In re Martin, 64 B.R. 638 (Bankr.D.Del.1986).
The Supreme Court set out the basic doctrine for Article III standing in Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).
The irreducible constitutional minimum of standing contains three elements: First, the plaintiff must have suffered an `injury in fact'  an invasion of a legally-protected interest which is (a) concrete and particularized, ... and (b) actual or imminent, not conjectural or hypothetical ... Second, there must be a causal connection between the injury and the conduct complained of ... Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.
Id. 504 U.S. at 560-561, 112 S.Ct. at 2136. Last year the Supreme Court reaffirmed those requirements. United States v. Hays, ___ U.S. ___, ___, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635 (1995).
In this case, Article III standing is simply the threshold inquiry because the Plaintiffs must also show that they have antitrust standing. The expansive nature of the antitrust statutes is given practical meaning by this standing doctrine. The established test was developed in Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). The Contractors test requires the Court to evaluate: (1) the causal connection between the alleged violation and the injury; (2) any improper motive; (3) if the nature of the injury was of a type that Congress sought to redress with the antitrust laws;[2] (4) the directness with which the alleged market restraint caused the injury; (5) the speculative nature of the damages; and (6) any risk of duplicative recovery or complex apportionment of damages. If the Plaintiffs cannot meet this specific test, regardless of whether they meet the general requirements of standing, they do not have standing to bring this suit.
The Eighth Circuit has recognized that the antitrust injury element of the Contractors test is potentially dispositive in a standing analysis. Lovett v. General Motors Corp., 975 F.2d 518, 520 (8th Cir.1992). The Plaintiffs contend that they suffered an antitrust injury because they pay more for their concert tickets than they would if Ticketmaster did not exercise monopoly power. That is not enough however, to qualify as an antitrust injury:
A mere causal connection between an antitrust violation and harm to [Plaintiffs] cannot be the basis for antitrust compensation unless the injury is directly related to the harm the antitrust laws were designed to protect. The Plaintiffs must have been the target of the anticompetitive activity, not one who has merely suffered indirect, secondary, or remote injury.
Id. at 520.
If there is an injured party who is the target of Ticketmaster's alleged antitrust activity, it is the venue  the "consumer" of Ticketmaster's ticket handling service.
The Plaintiffs have expertly drafted an elaborate Complaint which details the contracting process between Ticketmaster and the venues. It is the Plaintiffs own allegations in the Complaint which show that they are not best suited to bring this claim against Ticketmaster. If a violation has occurred, the appropriate party is a venue or class of venues and promoters who are the ones who "consume" Ticketmaster's product; they are the ones who would suffer any direct loss if there is supracompetitive pricing in the fee contracts due to Ticketmaster's alleged monopoly power.
Even if the antitrust injury prong is not dispositive, the Plaintiffs still lack standing because they also fail other elements of the Contractors test. If these Plaintiff had suffered an antitrust injury, they would lack standing because the damages would be speculative and the apportionment of those damages would present complex problems. *1278 Because there are many factors that combine to make the price of a ticket and regulate the purchasers' willingness to buy, the Court cannot accurately calculate the damages. Even if the Court could calculate the damages, it would be too difficult to identify the proper members of the Plaintiffs' proposed class. In addition to the task of tracking the credit card receipts for the time period in question, because the nature of the industry is such that many multiple-ticket orders are charged to one credit card, it would be nearly impossible to verify the identity of all the end purchasers of the individual tickets.
The Plaintiffs urge the Court to ignore the Contractors test and instead apply the analysis used by the Supreme Court in Blue Shield of Virginia v. McCready, 457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982). In that case, an employee whose medical benefits plan did not allow for payment of psychologist fees was found to have antitrust standing to sue the insurer because her participation through the employer's plan was inextricably intertwined in the psychotherapy market. Because the factual situation of this case is one step removed from that scenario, the McCready analysis does not apply. If the Court were to analogize that factual situation to this case, the musical performers would be the psychologists and the venues and ticket purchasers would be inextricably intertwined. Ticketmaster would be more analogous to the receptionist who took Ms McCready's appointment than they would be to insurance provider Blue Shield.
In addition to that factual distinction, the decision in McCready made clear that case did not pose problems of duplicative recovery. Id. 457 U.S., at 474-475, 102 S.Ct., at 2546. This case however, like Illinois Brick Co. v. Illinois, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), does present a problem of multiple recovery. If these Plaintiffs were allowed to recover, they would merely be the first in a long line of venues and promoters who could also state a claim and make a recovery, thus transforming treble damages against Ticketmaster into an exponential award.
Because the Court finds that the Plaintiffs do not have antitrust standing, their cases are dismissed. The Court will rule on the other two motions to dismiss even though they are now moot.

II. Jurisdiction and Venue
The second motion to dismiss puts forth a challenge to three of the suits on the grounds that they lack jurisdiction and venue pursuant to Rules 12(b)(2) and 12(b)(3) FED. R.Civ.P. Ticketmaster is incorporated in the state of Illinois and headquartered in the state of California.(13) In addition to filing a suit in Illinois, the Plaintiffs have filed suits in Georgia, Washington, Michigan, and Massachusetts.[3]
When conducting an inquiry into personal jurisdiction, the Court begins with venue because without venue, jurisdiction is moot. Sportmart, Inc. v. Frisch, 537 F.Supp. 1254, 1257 (N.D.Ill.1982). The venue provisions relied upon by the Plaintiffs are found in the Clayton Act, 15 U.S.C. § 22 and the general venue statute 28 U.S.C. § 1391(b). They require the Plaintiffs show Ticketmaster either inhabits the particular judicial district, may be found in that district, or transacts business there. There is no dispute that the first two elements cannot be met; the dispute is whether Ticketmaster transacts business in the subject judicial districts. The question before the Court therefore, is whether the actions of the subsidiaries, joint-ventures, and licensees in the subject jurisdictions provide sufficient tie to the Defendant to meet the heightened standard for jurisdiction and venue over the parent corporation instead of its jurisdiction of incorporation or geographic headquarters.
In considering the venue of a parent corporation based on the actions of its subsidiaries, courts apply a day to day control test. O.S.C. Corp. v. Toshiba America, 491 F.2d 1064, 1066 (9th Cir.1974); San Antonio *1279 Tel. Co. v. American Tel. & Tel. Co., 499 F.2d 349, 352 (5th Cir.1974). If the parent corporation has day to day control of the subsidiary, then it is found to transact business in the subsidiary's jurisdiction. If its control is more attenuated, there is not proper venue. In re Chicken Antitrust Litigation, 407 F.Supp. 1285, 1291 (N.D.Ga.1975); Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 372-373, 47 S.Ct. 400, 403, 71 L.Ed. 684 (1927).
The affidavit of Ned S. Goldstein, Senior Vice President and General Counsel of Ticketmaster Corporation, attests to the corporate parent-sub relationship within Ticketmaster Corporation.[4] He thoroughly describes the operations of the Defendant and avers that the Defendant owns no property and has no bank accounts or offices in the subject jurisdictions. All day to day dealings in the subject jurisdictions are handled by the operating officers of those corporations and not by the Defendant.
The Court finds that these ties are not sufficient to provide proper venue and jurisdiction in the three challenged districts. The Plaintiffs case in Illinois, as admitted by Ticketmaster, does have proper jurisdiction and venue under the theory of the Plaintiffs case.

III. Law of the Case
The final motion to dismiss is brought against the Massachusetts case on the theory of the law of the case doctrine. The law of the case doctrine is designed to promote uniform rulings during a single case and prevent relitigation of settled issues. UniGroup, Inc. v. Winokur, 45 F.3d 1208, 1211 (8th Cir.1995). The Defendant argues that this case has already been dismissed from the bench by the Honorable Robert E. Keeton in the District of Massachusetts.[5] Ticketmaster points to a portion of the record from that hearing in which Judge Keeton says: "I will allow the Ticketmaster Corporation's motion to dismiss for want of showing of personal jurisdiction." (Doc. # 30, ex. A) This Court also notes Judge Keeton's earlier comments which indicated that his ruling was not meant to be a final order and that it was open to reconsideration by himself or a transferee Court: "[T]he order I enter dismissing, if I do that, will be an interlocutory order over which this Court or any transferee court that got this case would have jurisdiction to modify ..." (Doc. # 50, Ex. A). His ruling therefore, was not final and is not supported by the law of the case doctrine.
Accordingly,
IT IS HEREBY ORDERED that Defendant's Motion to Dismiss 4:95 MDL 1033 SNL (# 34) is GRANTED and cases 4:95cv56 SNL, 4:95cv268 SNL, 4:95cv315 SNL, 4:95cv442 SNL, and 4:95cv785 SNL are DISMISSED on the merits.
IT IS FURTHER ORDERED that Defendant's Motion to Dismiss (# 31) is DENIED as MOOT but in the alternative is GRANTED and cases 4:95cv56 SNL, 4:95cv442 SNL, and 4:95cv785 SNL are DISMISSED on the merits as well.
IT IS FURTHER ORDERED that Defendant's Motion to Dismiss (# 30) is DENIED as MOOT and DENIED on the merits.
IT IS FURTHER ORDERED that the Defendant's Motion to Impose Sanctions Against Carlos Lidsky (# 32) is remanded to the Southern District of Florida, Miami Division, for disposition. As a result of today's ruling, this Court no longer retains jurisdiction over the matter and the Florida court is better suited to assess an appropriate penalty, if warranted, against the actions of a member of its own bar.
IT IS FINALLY ORDERED that all cases transferred to this Court as part of In Re: Ticketmaster Antitrust Litigation 4:95 MDL 1033 SNL be remanded to their transferor *1280 courts for entry of judgment in accordance with this Order.
NOTES
[1] The Department of Justice investigated the contracting practices of Ticketmaster and closed its investigation on July 5, 1995.
[2] Although the Sherman Act is often referred to as the Magna Carta of antitrust laws, the Court will not speculate whether the English barons envisioned their stand on the field of Runnymede in 1215 as one to protect the villagers from supracompetitive admission prices to see traveling minstrels.
[3] Presumably relying on the strength of their law of the case theory, which the Court will address directly, Ticketmaster chose not to include the Massachusetts case in this motion. The Court finds however, that the analysis for the cases from Georgia, Washington, and Michigan would apply to the Massachusetts case as well.
[4] Although the Plaintiffs have not filed a motion to strike the affidavit, they suggest the Court not consider it. Ticketmaster is correct however, that uncontradicted affidavits relating to personal jurisdiction control over an unverified complaint; the Court need not ignore Mr. Goldstein's averments. Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir.1990); Alexander v. Circus Circus Enterprises, Inc., 972 F.2d 261, 262 (9th Cir.1992).
[5] There was no judgement entered and, despite the Court's request, neither party has filed the complete transcript from Judge Keeton's hearing.