5 F.Supp.2d 752 (1998)
William H. VIEHWEG, Plaintiff,
v.
Susan H. MELLO, Defendant.
No. 4:97CV00211 TCM.
United States District Court, E.D. Missouri, Eastern Division.
May 26, 1998.
*753 *754 William H. Viehweg, pro se.
Scott C. Harper, Brinker & Doyer, Clayton, MO, for Defendant.

MEMORANDUM AND ORDER
MUMMERT, United States Magistrate Judge.
This diversity case is before the Court on several dispositive motions and on various miscellaneous motions filed by the parties. The dispositive motions include defendant Susan Mello's two motions for summary judgment [Docs. 71, 105] and her two motions to dismiss [Docs. 86, 89]. The miscellaneous motions include, but are not limited to, two motions to strike [Docs. 89, 91], a "motion for order of revision of the March 30, 1998, order," [Doc. 109], and plaintiff William Viehweg's motion for leave to file a second amended complaint [Doc. 100].

Background
The following facts are generally applicable to the pending motions. Additional facts applicable to specific motions will be outlined as necessary.
William Viehweg ("Plaintiff") was hired by Inprint Systems, Inc. ("ISI") in January 1987 and fired in February 1990. (Def.'s Mtn. to Dismiss Ex. [A] at ¶ 1(D)[1] and Mtn. Ex. "K" at [68].[2]) On October 3, 1991, he consulted *755 Susan Mello ("Defendant"), an attorney licensed to practice in Missouri and with offices in Clayton, about possible causes of action against ISI and two of its employees, David Barry and John Dultz. (Am. Compl. at ¶¶ 2 and 3.) That same day, he signed a fee agreement providing, in relevant part, that he "acknowledges that no representations concerning the successful termination of the claims, or the favorable outcome of any legal action which may be filed has been made." (Pl.'s Aff. at ¶ 8; Def.'s Answer Ex. "A" (emphasis added).) Pursuant to that agreement, Plaintiff paid Defendant $500.00 as a "non-refundable" retainer and also agreed to pay her an hourly rate of $90.00. (Id.) Plaintiff wrote Defendant two days later, explaining what causes of action he thought he had against ISI and the two employees. (Def.'s Answer Ex. "B".)
Defendant wrote ISI on November 6, advising the company that, based on information she allegedly had received from Plaintiff, Plaintiff apparently had a cause of action against ISI for breach of contract and violation of its duties under the Employment Retirement Income Security Act ("ERISA") and that it was her policy to contact potential parties in advance of litigation to attempt to resolve the underlying disputes. (Def.'s Answer Ex. "B".) An attorney representing ISI wrote Defendant on November 11 requesting additional time within which to investigate and respond to Plaintiff's claims. (Def.'s Mtn. Ex. "D"; Pl.'s Aff. at ¶ 9.)
The next correspondence regarding Plaintiff's claims against ISI was a card from Plaintiff to Defendant dated January 13, 1992, inquiring about the status of his claims, requesting advice about his options, and expressing his concern that "[t]he two year statute of limitation [was] approach[ing]." (Def.'s Mtn. Ex. "E".) On January 16, Defendant wrote Plaintiff, apologizing for any delay, forwarding him copies of correspondence she had recently received from ISI's attorney and her response, and enclosing a client information form she requested that he complete and return. (Def.'s Mtn. Ex. "F".) The January 14 letter from ISI's attorney read, in part, that:
[Plaintiff] was not terminated for making any claim for an injury in the workplace. [Plaintiff] had a propensity to leave work without an excuse and without informing his supervisor of his desire or need to leave work. After several discussions concerning this behavior, [Plaintiff] was terminated for leaving the workplace without authorization. (Def.'s Mtn. Ex. "G".)
Defendant promptly replied to the letter, and, in her written reply, advised opposing counsel that she was assuming that he was acknowledging the validity of several claims or allegations that he did not address in his letter. (Def.'s Mtn. Ex. "H".) Opposing counsel responded by letter dated January 24, taking issue with Defendant's assumptions. (Def.'s Mtn. Ex. "I".) Defendant replied to the response; opposing counsel responded to that reply; Defendant wrote an addendum on opposing counsel's response and forwarded same to counsel. (Def.'s Mtn. Ex. "J".)
On February 10, Plaintiff delivered the information he had compiled at Defendant's request to Defendant's office. (Pl.'s Aff. at ¶ 11.) Included in that information was a list of various lawsuits that he had prosecuted pro se. (Def.'s Mtn. Ex. "K" at [12]-[14].) Two of those lawsuits named attorneys as defendants. (Id.) Three days later, Defendant wrote Plaintiff terminating her representation. (Def.'s Mtn. Ex. "L".) She delineated in that letter the problems she anticipated with any lawsuit against ISI arising out of Plaintiff's employment, advised him that another attorney might assess the case differently, and enclosed a list of attorneys who generally represent plaintiffs. (Id.)
On June 30, 1992, Plaintiff filed suit pro se against ISI, its owner, and another employee. (Viehweg v. Dultz, No. 4:92CV1243 CAS (E.D.Mo.)) The two individuals were sued for tortious interference of business relationship, the company was sued for violating Missouri's service letter statute and also sued under a theory of prima facie tort for discharging Plaintiff. Plaintiff explained his motive for filing the suit as a desire to establish a legal precedent that an employee's work history is a legally protectable asset. *756 (Pl.'s Aff. at ¶ 7.) Plaintiff vigorously prosecuted his action pro se until two attorneys, Lloyd Vasquez and Grace Fuentes, entered their appearance on his behalf in May 1994 and February 1995, respectively. Plaintiff paid his lawyers an initial retainer of $11,500.00, agreed to pay an hourly rate of $120.00, and paid a second retainer of $10,000.00 in January 1995. (Def.'s Mtn. to Dismiss Ex. [A] at ¶¶ 3(C)(i)-(iii).) In his answers to interrogatories, Plaintiff listed only Defendant, Vasquez, and Fuentes as lawyers he contacted about his claims against ISI and the two individuals. (Id. at ¶ 3(F).)
In June 1995, Plaintiff dismissed his suit. (Viehweg v. Dultz, supra.) He states in his answers to interrogatories that he settled the case for $60,000.00. (Def.'s Mtn. to Dismiss Ex. [A] at ¶ 3(E).) When asked what he contended Defendant would have done to obtain a higher settlement, Plaintiff replied, "I have not contended that [Defendant] would have done anything differently than [] Vasquez and Fuentes did." (Id..)
Plaintiff does contend, however, that "[Defendant's] misrepresentations to [ISI's] lawyer about any five year agreement and about how I hurt my back, that [Defendant's] vitriolic correspondence with [ISI's] lawyer, that [Defendant's] abandonment of me and my subsequent pro se handling of the case[] damaged my ability to obtain a higher settlement and that damage is the nominal sum of $1.00." (Pl.'s Aff. at ¶ 18.) Plaintiff alleges in his amended complaint that he "incurred medically diagnosable and medically significant, emotional and mental pain and suffering," as a result of Defendant's actions. (Am. Compl. at ¶ 22.) In his answers to interrogatories, however, Plaintiff states that he has "never been treated for emotional distress, [has] never undergone psychological testing, though I have had twelve general counseling sessions, not directly related to any claim in this action." (Def.'s Mtn. to Dismiss Ex. [A] at ¶ 3(B).)
While Plaintiff's suit against ISI and the two individuals was pending, Defendant wrote Plaintiff on May 24, 1994, returning the written material he had given her, calculating the hours she had spent representing him, and refunding to him $40.00 of her retainer fee. (Def's Mtn. Ex. "M".)

Discussion
Motion for Leave to File Second Amended Complaint. Plaintiff requests leave to file a second amended complaint which he describes as adding neither parties nor claims. (Mtn. at ¶ 2.) The second amended complaint does include additional allegations of actions taken or not taken by Defendant during her three-month representation of Plaintiff, actions of which he clearly was aware when filing this action. This request is made one year after the seminal complaint was filed, eight months after the deadline established by the Court's case management order for amendment of pleadings, and three months after Defendant filed her motion for summary judgment.
"[I]t is well settled that leave to amend should `be freely given when justice so requires.'" Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 224 (8th Cir.1994) (quoting Fed.R.Civ.P. 15(a)). Thus, leave shall be granted absent a good reason for denial, e.g., undue delay, bad faith or dilatory motive, repeated failure to cure the deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment. See Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).
The Court finds three good reasons for denying Plaintiff leave to file his second amended complaint. First, as Plaintiff reveals, the second amended complaint adds neither new parties nor new claims. Thus, denial of leave to amend would not cause him to forfeit any claim. Second, there would be undue prejudice to Defendant, who has moved twice for summary judgment and twice to dismiss. See Moore v. Jackson, 123 F.3d 1082, 1089 (8th Cir.1997) (affirming denial of leave to amend complaint after opposing party had moved for summary judgment); Williams, 21 F.3d at 224-25 (affirming denial of leave to amend complaint fourteen months after first complaint was filed, six days after discovery deadline, and less than three weeks before trial); Perkins v. Spivey, 911 F.2d 22, 34-35 *757 (8th Cir.1990) (affirming denial of leave to amend complaint eighteen months after first complaint filed); Thompson-El v. Jones, 876 F.2d 66, 67 (8th Cir.1989) (denying leave to amend complaint to add four new defendants in case which had been pending for 18 months, discovery had been completed for six weeks, summary judgment motions were due two weeks before, and trial was to begin in two weeks). Third, for the reasons set forth below, the amendments would be futile. See Wald v. Southwestern Bell Corp. Customcare Medical Plan, 83 F.3d 1002, 1005 (8th Cir.1996) (district court did not abuse its discretion in denying party leave to amend complaint to add count which would not have stated cause of action); Fuller v. Secretary of Defense of U.S., 30 F.3d 86, 88-89 (8th Cir.1994 (denial of leave to amend complaint to add claim which required exhaustion of administrative remedies was not abuse of discretion).
Motion for Order of Revision. By order of March 30, 1998, the Court granted Defendant's motion to dismiss Count III of the First Amended Complaint on the grounds that the count was based on the same actions as gave rise to Count I but was simply rephrased as a separate claim. Plaintiff requests that the Court reconsider that order, stating that Count I alleged that Defendant violated a duty owed him when not litigating his claims against David Barry, owner of ISI, and Count III alleged that Defendant violated a duty owed him when not litigating his claim against John Dultz. Plaintiff further states that his reference to Barry in Count III was a typographical error and that the other references to John Dultz were accurate. Defendant opposes the motion, arguing, inter alia, that such motions for reconsideration are not permissible.
This Court has the inherent power to reconsider and modify an interlocutory order any time prior to entry of judgment. See Murr Plumbing, Inc. v. Scherer Bros. Financial Services Co., 48 F.3d 1066, 1070 (8th Cir.1995); Lovett v. General Motors Corp., 975 F.2d 518, 522 (8th Cir.1992). Thus, the Court may depart from an earlier holding if it is convinced that the holding is incorrect. See Id.
The Court's earlier ruling dismissing Count III was premised on the apparently mistaken reading that it was against Barry. The Court notes that John Dultz is named as the defendant in other paragraphs in the count. Accordingly, the Court will grant Plaintiff's motion, set aside its earlier order, and deny the motion to dismiss as to Count III.
Motions for Summary Judgment. Defendant moves for summary judgment on the grounds that (i) Plaintiff can not establish any causation between her actions and any damages incurred by him; (ii) she has no duty to represent a client when that representation could result in a violation of court rules; and (iii) she never assumed the duty of representing Plaintiff in litigation against ISI and its employees. Plaintiff counters, in part, that Defendant withdrew from representing him because of her personal repugnance to his previous litigation against lawyers and that she improperly abandoned him when she knew, or should have known, that Plaintiff would encounter hardships and prejudice if he had to proceed against ISI pro se.
In a supplement to her motion for summary judgment, Defendant further argues that she decided when first speaking with Plaintiff in October 1991 not to represent him in his suit against the two employees and that Plaintiff should have known this at least by November 1991 and, consequently, his two claims relating to those two employees are barred by the five year statute of limitations for legal malpractice actions.
Rule 56(c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue of material fact is genuine if it has a real basis in the record; and, a genuine issue of fact is material if it "might affect the outcome of the suit under the governing law." Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir.1992) (citations omitted).
*758 The initial burden is on the moving party to clearly establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. See City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir.1988). After the moving party discharges this burden, the non-moving party must do more than show that there is some doubt as to the facts. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the non-moving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All disputed facts are to be resolved, and all inferences are to be drawn, in favor of the non-moving party. See Kopp v. Samaritan Health Sys., Inc., 13 F.3d 264, 269 (8th Cir.1993).
Conclusive assertions of ultimate fact are entitled to little weight, however, when determining whether a nonmovant has shown a genuine issue of fact sufficient to overcome a summary judgment motion properly supported by depositions or affidavits. See Miller v. Solem, 728 F.2d 1020, 1024 (8th Cir. 1984). Moreover, where the unresolved issues are primarily legal, rather than factual, summary judgment is particularly appropriate. See Crain v. Board of Police Comm'rs, 920 F.2d 1402, 1405-06 (8th Cir.1990).
Plaintiff alleges in Count I that Defendant breached a fiduciary duty owed him when terminating their attorney-client relationship prior to the conclusion of his claims against David Barry; in Count II that Defendant breached the same duty in the same way prior to the conclusion of his claims against ISI; and in Count III that Defendant breached the same duty in the same way prior to the conclusion of his claims against John Dultz.
A claim of legal malpractice has four elements: (1) an attorney-client relationship; (2) negligence or breach of contract by the attorney; (3) proximate causation of plaintiff's damages; and (4) damages to the plaintiff. See Klemme v. Best, 941 S.W.2d 493, 495 (Mo.1997) (en banc); Huber v. Magna Bank of Missouri, 959 S.W.2d 812, 814 (Mo.Ct.App.1997); McDowell v. Waldron, 920 S.W.2d 555, 559 (Mo.Ct.App.1996). A claim of breach of fiduciary duty, or constructive fraud, has five elements: (1) an attorney-client relationship; (2) breach of a fiduciary obligation by the attorney; (3) proximate causation; (4) damages to the plaintiff; and (5) no other recognized tort encompasses the facts alleged. See Klemme, 941 S.W.2d at 496. The second and fifth elements distinguish a claim of breach of fiduciary duty from a claim of legal malpractice. See Id. If the complained-of actions by the attorney can be characterized as both negligence and a breach of a fiduciary obligation, then the sole claim is legal malpractice. See Id.
Plaintiff complains that Defendant breached an obligation owed him by terminating her representation of him, knowing that he would be unable to persuade another attorney to take his claims, and thereby forcing him to litigate his claims himself, although he was not competent to do so. Regardless whether Plaintiff's complaint is characterized as one of legal malpractice or a breach of fiduciary duty, he has failed to establish that Defendant breached a duty to him, that her action was the proximate cause of any damages he incurred, or that he sustained any damages.
Plaintiff alleges that Defendant terminated their attorney-client relationship because she was repulsed by his lawsuits against lawyers; Defendant counters that she terminated the relationship because of ethical considerations. Under either explanation, Defendant had no unperformed duty to Plaintiff. "[A]n attorney may properly withdraw from representation when he or she determines that the matter should not be brought to suit. Indeed, such a principle is manifest from such mechanisms as Fed. R.Civ.P. 11, which actually punish an attorney from pursuing a suit that is not properly maintainable under the governing substantive law." Riordan v. Jones, 793 F.Supp. 650, 651 (D.Md.1992). And, under Rule 4(b)(3) of the Missouri Supreme Court Rules, when no proceedings are pending before a tribunal, a lawyer may withdraw from representing *759 a client when "a client insists upon pursuing an objective that the lawyer considers repugnant or imprudent." See also American Bar Association Model Rules of Professional Conduct 1.2 Comment [1] ("[A] lawyer is not required to pursue objectives or employ means simply because a client may wish that the lawyer do so.")
In addition to failing to establish a breach of duty, Plaintiff has also failed to establish that Defendant's termination of their attorney-client relationship was the cause of any damages incurred by him.
The attorney-client relationship between Plaintiff and Defendant began in October 1991 and ended in February 1992. Plaintiff makes several references in the pleadings to a statute of limitations which would run out on his claims in June 1992  two and one-half years after his termination from ISI. Missouri, however, provides for a five year statute of limitations for actions "for taking, detaining or injuring any goods or chattels, including actions for the recovery of specific personal property, or for any other injury to the person or rights of another ...," Mo.Rev.Stat. § 516.120(4), and for "actions for relief on the ground of fraud...," id. at § 516.120(5). See Ryder v. Ward, 933 S.W.2d 428, 430 (Mo.Ct.App.1996) ("statute of limitations for tort claims is five years"). Thus, regardless whether Plaintiff characterizes his action against ISI, Barry, and Dultz as one for tortious interference with business relationship,[3] fraud, or for the injury to his work history, the action was governed by the five year statute of limitations. Even if the Court were to accept, however, Plaintiff's allegation that a two and one-half year limitation period governed his claim, he had, at the minimum, six months within which to retain new counsel.
In Faulkner v. Ensz, 109 F.3d 474 (8th Cir.1997), a former client sued an attorney she had consulted about filing a possible Title VII sex discrimination claim. The attorney had turned his file on the plaintiff's case over to another attorney, with plaintiff's knowledge, a month before the deadline for filing an administrative charge. Id. at 476. The other attorney contacted the plaintiff after the deadline had passed and told her that she (the attorney) was not interested in pursuing the case because of the statute of limitations problem. Id. The Eighth Circuit Court of Appeals found that the sued attorney's involvement ended in May 1991 when he gave the file to another attorney and concluded that the plaintiff's suit failed on the causation element, noting that "[u]nder Missouri law, a successful attorney malpractice claim requires a causal connection between the attorney's negligence and the plaintiff's damages." Id. "To prove damages and causation, the plaintiff must establish that `but for' the attorney's negligence the result of the underlying proceeding would have been different." Id. (quoting London v. Weitzman, 884 S.W.2d 674, 677 (Mo.Ct.App.1994)). "`But for' is an absolute minimum for causation because it is merely causation in fact.... [T]here [must] be some causal relationship between the defendant's conduct and the injury or event for which damages are sought.'" Id. (quoting Callahan v. Cardinal Glennon Hosp., 863 S.W.2d 852, 862 (Mo. 1993) (en banc)) (alterations in original). See also Rodgers v. Czamanske, 862 S.W.2d 453, 457 (Mo.Ct.App.1993) (plaintiff in legal malpractice case must prove that, but for attorney's complained-of actions, result of underlying proceeding would have been different).
In Riordan, supra, the father of a child injured in a bicycle accident sued three attorneys he had consulted about filing a product liability against the manufacturer. The attorneys had each concluded that the suit would be without merit, and withdrew from representing the father. The father sued the attorneys for malpractice, alleging that the child suffered redressable injury as a result of their withdrawal. The district court granted the attorneys summary judgment, *760 noting that "it has been consistently held that where, as here, there is sufficient time to engage new counsel and file suit, there is no malpractice." Riordan, 793 F.Supp. at 651. See also Steketee v. Lintz, Williams & Rothberg, 38 Cal.3d 46, 694 P.2d 1153, 210 Cal.Rptr. 781 (1985) (en banc) ("[a]n attorney cannot be held liable for failing to file an action prior to the expiration of the statute of limitations if he ceased to represent the client and was replaced by other counsel before the statute ran on the client's action").
In the instant case, Defendant was not immediately replaced by other counsel. The Court finds that this fact is not material. As noted above, Plaintiff had time within which to secure other counsel; however, Plaintiff has stated that he did not attempt to do so. See Medrano v. Reyes, 902 S.W.2d 176, 178 (Tex.Ct.App.1995) (affirming grant of summary judgment to law firm who had withdrawn from representation 21 months before running of statute of limitations and holding that firm should not be held liable for failing to file an action on behalf of plaintiffs before the expiration of statute of limitations where there was sufficient time for the employment of other counsel before expiration period); Harvey v. Mackay, 109 Ill.App.3d 582, 587, 65 Ill.Dec. 167, 440 N.E.2d 1022 (1982) (attorney's failure to file lawsuit prior to expiration of statute of limitations not malpractice where attorney withdrew from representation one year before expiration period). Moreover, Plaintiff has not alleged, nor is there any indication in the record to support such an allegation, that Defendant interfered or otherwise obstructed Plaintiff in any effort to secure counsel. Additionally, Plaintiff's action was not barred by the statute of limitations. He filed the suit pro se in June 1992 and settled it, represented by counsel, in June 1995. He stated in his answers to interrogatories that there is nothing that Defendant would have done that would have secured him a higher settlement. Thus, Plaintiff was adequately represented by two other attorneys in the litigation about which he initially consulted Defendant and was satisfied with their representation and the results. Plaintiff, therefore, can not establish any causal connection between any fault he may now find with the underlying litigation and Defendant's complained-of actions. See Cain v. Hershewe, 760 S.W.2d 146, 150 (Mo. Ct.App.1988). See also Cain v. Webster, 770 S.W.2d 327, 330-31 (Mo.Ct.App.1989) (per curiam) (plaintiff failed to establish submissible case of legal malpractice when he failed to establish what defendant did or omitted which caused his damages).
Moreover, even if Plaintiff were not satisfied with the results obtained by his new attorneys, his decision not to contact any attorneys until he contacted Fuentes and Vasquez and their subsequent control of the underlying litigation are intervening causes. "An intervening cause is a new and independent force which interrupts the chain of events initiated by the defendant's negligence in such a significant manner as to become the direct and proximate cause of the plaintiff's damages." Rodgers v. Czamanske, 862 S.W.2d 453, 458 (Mo.Ct.App.1993). Actions taken by subsequent attorneys affecting the disposition of the litigation may be an intervening cause. See Id. (dismissal of counterclaim by attorney who represented plaintiff after defendant was intervening cause). See also Faulkner, 109 F.3d at 476-77 (new attorney's assumption of case was intervening cause). Similarly, Plaintiff's failure to seek other counsel to prosecute his suit against ISI, therefore rendering it necessary that he file the suit pro se, is an intervening cause of his initially prosecuting that suit pro se.
In order to prevail on his claims against Defendant, Plaintiff must establish that there were damages proximately resulting from her actions, and the measure of those is the amount he would have received "but for" Defendant's negligence. See Steward v. Goetz, 945 S.W.2d 520, 532 (Mo.Ct. App.1997). "`[D]amages are speculative ... if the uncertainty concerns the fact of whether there are any damages rather than the amount.'" London, 884 S.W.2d at 677 (quoting R.E. Mallen and J.M. Smith, Legal Malpractice, Vol. 1, § 16.3 (3rd ed.1989)).
Plaintiff has failed to establish that he incurred any damages as a result of Defendant's actions  he is satisfied with the results in the underlying litigation and does *761 not contend that Defendant could have achieved more satisfactory results. See Lange v. Marshall, 622 S.W.2d 237, 239 (Mo. Ct.App.1981) (reversing award of damages to plaintiff in legal malpractice case in which she had failed to establish that had defendant done the things she contended he should have done that she would not have incurred incidental fees and expenses that she claimed as damages).
Additionally, the Court notes that Plaintiff does not have expert testimony to support his claims. "`[E]xcept in clear and palpable causes (such as the expiration of a statute of limitation), expert testimony is necessary to establish the parameters of acceptable professional conduct, a significant deviation from which would constitute malpractice.'" Cooper v. Simon, 719 S.W.2d 463, 464-465 (Mo.Ct.App.1986) (quoting Hughes v. Malone, 146 Ga.App. 341, 247 S.E.2d 107, 111 (1978)). See also Bross v. Denny, 791 S.W.2d 416, 421 (Mo.Ct.App. 1990) (holding to same effect). In other words, expert testimony is necessary if the type of negligence alleged is not so clear that it could be assessed without the aid of expert testimony and, consequently, a jury would have to resort to pure speculation in order to find negligence on the part of an attorney. See Cooper, 719 S.W.2d at 465.
The negligence or breach of duty alleged by Plaintiff is not so clear and palpable that it can be assessed without the aid of expert testimony. Moreover, the Court rejects as meritless Plaintiff's contention that he is competent to give expert testimony in his legal malpractice case because he, as a pro se litigant, is expected to follow the civil rules of procedure and the local rules.
For the foregoing reasons, the Court will grant Defendant's motion for summary judgment on each of the three pending counts. The Court will, therefore, not reach the merits of Defendant's supplemental motion for summary judgment or the two motions to dismiss.
Motion to Seal. Defendant requests that this Court order the transcript of her deposition and the videotape of that deposition sealed, citing, inter alia, confidential matters disclosed during that deposition. The Court will grant this motion and direct the Clerk's Office to seal the transcript and videotape deposition, including the copy of the transcript attached as an exhibit to Plaintiff's response to Defendant's motion for summary judgment, docket number 95.
All other pending motions will be denied as moot.

Conclusion
Defendant's request for summary judgment on each of the three counts of Plaintiff's complaint is meritorous based on Plaintiff's failure to refute her showing that there is no genuine issue of material fact as to the elements of a claim of legal malpractice or a claim of breach of fiduciary duty.
Accordingly,
IT IS HEREBY ORDERED that plaintiff William H. Viehweg's Motion for Order of Revision of March 30, 1998, Order is GRANTED. [Doc. 109]
IT IS FURTHER ORDERED that plaintiff William H. Viehweg's Motion for Leave to File Second Amended Complaint is DENIED. [Doc. 100]
IT IS FURTHER ORDERED that defendant Susan H. Mello's Motion for Summary Judgment is GRANTED. [Doc. 71]
IT IS FURTHER ORDERED that defendant Susan H. Mello's motion to seal the transcript and videotape of her deposition is GRANTED. [Doc. 90.] The Clerk's Office is hereby directed to seal the transcript of her deposition docketed as number 94 and the copy of that transcript attached as an exhibit to Plaintiff's pleading docketed as number 95.
IT IS FURTHER ORDERED that all remaining pending motions are DENIED as moot.
IT IS FINALLY ORDERED that separate judgment shall be entered in favor of Defendant and against Plaintiff in the instant cause of action.
NOTES
[1] References to "Def.'s Mtn. to Dismiss Ex. [A]" are to Plaintiff's answers to Defendant's interrogatories.
[2] References to "Def.'s Mtn. Ex." are to exhibits attached to Defendant's November 1997 motion for summary judgment.
[3] The prima facie elements in Missouri of a claim of tortious interference with business relationship are: existence of a valid business relationship; knowledge of the relationship or expectancy on the part of the defendant; an intentional interference with inducing or causing a breach or termination of the relationship or expectancy; the absence of justification; and resultant damages to the party whose relationship or expectancy had been disrupted. See Williams v. Blumer, 763 S.W.2d 242, 246 (Mo.Ct.App.1988).